**HALPERN v. ANDREWS, Asst. Secretary of the Treasury, et al.**

District Court, E. D. Pennsylvania. October 25, 1927.

No. 4025.

1. **Intoxicating liquors** ☞72—Evidence held to warrant refusal of permit to withdraw alcohol for manufacture of tobacco spray on ground application was not bona fide.

On review of action of Prohibition Commissioner in disapproving application for permit to withdraw specified quantity of denatured alcohol to be used in the manufacture of tobacco spray, evidence *held* to warrant the disapproval on the ground that application was not made in good faith for the legitimate requirements of applicant's business.

2. **Intoxicating liquors** ☞71—Condition of granting alcohol withdrawal permit, that applicant agree not to manufacture, except in presence of government agents, held reasonable under circumstances.

Where evidence created strong suspicion that application for permit to withdraw denatured alcohol to be used in manufacture of tobacco spray was made in bad faith, requirement, as condition of granting permit, that applicant should notify Commissioner of his intention to manufacture whenever he intended to do so, and agree not to manufacture except in presence of government agents, *held* reasonable, and applicant's refusal to comply therewith may be considered, with other circumstances, on appellate review of denial of permit.

3. **Intoxicating liquors** ☞70—In passing on application for new liquor withdrawal permits, Commissioner may consider all circumstances known to him, from whatever source knowledge may be derived.

On application for new liquor withdrawal permits under National Prohibition Act (27 USCA), Commissioner may consider all circumstances known to him in his official capacity which have a bearing on the application, from whatever source such knowledge may be derived, and if the facts so known to Commissioner produce a reasonable belief that application is not made in good faith, that applicant is not a proper person to be intrusted with a permit, or that liquor withdrawn will be diverted to illegal purposes, a disapproval of the permit is not wholly unsupported by the evidence.

4. **Intoxicating liquors** ☞72—Burden is on applicant to show that refusal of liquor withdrawal permit is arbitrary or capricious (National Prohibition Act [27 USCA]).

Where Commissioner's refusal of permit to withdraw intoxicating liquor under National Prohibition Act (27 USCA) is not wholly unsupported by evidence, burden is on applicant to show that such refusal is either arbitrary or capricious.

In Equity. Suit by Joseph L. Halpern, trading as the Halpern Leaf Tobacco Company, against Lincoln C. Andrews, Assistant Secretary of the Treasury, and others. Bill dismissed.

Michael Serody, of Philadelphia, Pa., for plaintiff.

George W. Coles and W. C. Graham, U. S. Attys., both of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge. This is a bill in equity to review the action of the Prohibition Commissioner, disapproving the application of Joseph L. Halpern for a permit to withdraw 5,000 gallons of specially denatured alcohol per 30-day period, to be used in the manufacture of tobacco spray. After formal action by the Commissioner, disapproving the application, a hearing was granted at the request of the applicant, in accordance with the practice in this district, at which the applicant produced evidence bearing upon the purpose for which he desired the permit and his qualifications to hold it. The purpose of such hearing, as the court understands it, is two-fold: To afford the Commissioner an opportunity to reconsider his decision, if the evidence there produced should warrant it, and to permit the applicant to make a record on which a review may be based. From the evidence adduced, it appears that the applicant had a contract in writing with one John Del Monte, by which the applicant undertook to restore to perfect condition a certain quantity of tobacco recited as amounting to approximately 750,000 pounds. The tobacco in question was located in a warehouse in Lancaster, Pa., and was supposed to have been damaged by smoke. The applicant proposed to bring the tobacco to Philadelphia, cure it, and deliver to Del Monte in New York. Under his contract, he was to receive as compensation 14 cents per pound. After the hearing the Commissioner declined to reconsider his disapproval of the application. As shown by the answer filed to this bill, as well as by the report of the hearer who heard the case, which is part of the record on this appeal, the Commissioner based his action on several considerations.

[1] First. The Commissioner did not believe that the application was made in good faith, or because of any legitimate requirement for the use of the product, and did not believe that the contract offered in evidence was bona fide. It appeared that the applicant had never before cured spoiled or smoked tobacco, except that he had treated or cured with his casing fluid a sample containing 12 or 14 pounds, received by parcel post or express from Lancaster, Pa.; that he had never gone to Lancaster to examine any portion of this large amount of tobacco; that he did

not know who really owned the tobacco; that he had no information in relation to the amount of tobacco or its condition, except what was told him by Del Monte; and that he could not say whether the sample received by him was a portion of the tobacco involved in the contract, nor that this sample had been damaged by smoke. Del Monte stated in an affidavit filed that it was a fair sample of the tobacco at Lancaster, but the important point is the knowledge or want of knowledge of the applicant himself, as bearing on the question of his good faith. It also appeared, from the affidavit of a representative of the adjusters who had fixed the losses of the owners of the tobacco, that, instead of there being 750,000 pounds, the amount that was actually damaged by fire was 69,400 pounds, and there was testimony that the tobacco in question showed no traces of having been actually damaged by fire or smoke, although it had been in some way involved in a fire.

The cost of the alcohol alone to the applicant, assuming that he withdrew the entire permitted quantity which he said would be necessary, would be $67,500, and the total compensation which the applicant would receive under his contract would be $105,000. The applicant was a successful business man, and according to his own testimony a man of responsibility. In view of all these circumstances, the Commissioner came to the conclusion that, if the contract had really been a bona fide one, the applicant would have made a very careful and thorough investigation in a transaction of this size to satisfy himself that the facts were as the contract indicated, and that he would be able to comply with the terms of the contract and meet the obligations imposed upon him by it. The total lack of adequate investigation in preparation led the Commissioner to the conclusion that the contract was not bona fide, and, although it is not a necessary part of this review, it may be said that a consideration of the testimony leads the court to the same conclusion.

Second. The records of the prohibition administrator's office for this district, officially known to the Commissioner, though not offered in evidence, showed at the time this bill was filed there were 15 permittees theoretically engaged in manufacturing tobacco spray for sale or use, having withdrawal privileges of 88,000 gallons of alcohol per month. Prior to and including November, 1926, these 15 permittees had made a practice of withdrawing their full quota of 88,000 gallons of alcohol per month, which alcohol they reported to have been manufactured into tobacco spray and sold to the trade, or used in their own tobacco business. In the month of November, inspectors were placed in the plants of these permittees, and in December, 1926, the withdrawal of the entire 15 permittees dropped from 88,000 to 8,595 gallons for that one month. These figures were a matter of record in the office of the prohibition administrator at the time of the application. It is also a fact, known to the Commissioner, that the formula for the tobacco spraying process is one of the easiest of all formulas for specially denatured alcohol to redistill. Of course, if the applicant's contract with Del Monte were bona fide, these facts would not be of importance in determining his right to a permit, but when the conclusion arrived at is that his alleged contract is not bona fide, they become of a great significance as bearing upon the legitimate needs of the trade, and the probabilities of his using the alcohol for lawful purposes.

[2] Third. The applicant refused to comply with a suggestion from the Commissioner that if the permit were to be granted the applicant should notify the Commissioner of his intention to manufacture whenever he intended to do so, and to agree not to manufacture, except in the presence of agents. This the applicant refused to do, but suggested that the government send agents to his plant to remain on duty 24 hours a day (an obviously impossible arrangement). We do not wish to be considered as ruling that the Commissioner has the right to impose this condition upon the granting of any and all permits; but we think, in view of the circumstances surrounding this alleged contract and the strong suspicion of bad faith connected with it, the requirement was reasonable, and the refusal of the applicant to comply may be taken into consideration, with other circumstances of the case.

[3] In Ma-King Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, the Supreme Court discussed the discretionary powers of the Commissioner in cases involving applications for permits (which, of course, include applications for increased allowances) and said that the court's authority upon review was "to determine whether, upon the facts and law, the action of the Commissioner is based upon an error of law, or is wholly unsupported by the evidence, or clearly arbitrary or capricious." The position of the applicant in this case is based upon the use of the Supreme Court of the phrase "wholly unsupported by the evidence." In effect the applicant contends that the rule announced by the Supreme Court means

that in order to justify the refusal of the Commissioner to approve an application, there must be substantive evidence produced either at a hearing before the Commissioner or before the court of some fact which will justify such disapproval. He denies the right of the Commissioner to consider matters within his knowledge not adduced in the form of evidence, and he denies the right of the Commissioner to making a finding of bad faith upon the facts shown in this case. In the absence of positive evidence he argues that the court must find that the Commissioner's act is "wholly unsupported by the evidence," within the meaning of the opinion in the Ma-King Case.

I do not construe the language referred to as sustaining the complainant's contention. To do so would place upon the Commissioner the burden of producing tangible evidence of personal unfitness or violation of the law, or something equivalent, before any application could be refused. Under such a theory the discretion vested in the Commissioner, and expressly held in the Ma-King Case to reside in him, would be reduced to the function of a mere fact-finding authority. It is clear that it was the intention of the law, in cases of new applications, to give him a much wider discretion than that. In Fox v. Blair (D. C.) 20 F.(2d) 235, the distinction between the function of the Commissioner in cases of revocations of permits and of new applications was pointed out and emphasized. It may be noted that, in cases of new applications, the National Prohibition Act (27 USCA) does not provide for any hearing before the Commissioner at all, though the practice in this district is to hold such hearing after action by the Commissioner refusing the permit, if requested by the applicant.

Upon applications for new permits (and this applies as well to applications for increases in permitted quantities) the Commissioner may consider all circumstances known to him in his official capacity which have a bearing upon the application before him. If the circumstances of the application itself, together with all the facts surrounding it, as known to the Commissioner, from whatever source such knowledge may be derived, are such as to produce reasonable belief that the application is not made in good faith, that the applicant is not a proper person to be intrusted with a permit, or that the liquor withdrawn will be diverted to illegal purposes, then a disapproval of the permit cannot be said to be wholly unsupported by the evidence.

This conclusion is not in any way at variance with that reached by this court in Feil Brewing Co. v. Blair (D. C.) 2 F.(2d) 879. That was a case of renewal of an existing permit, under which the applicant had invested money and had an established business, and the court properly treated the Commissioner's refusal to renew as equivalent, for all practical purposes, to a revocation. I do not think that the court in that case intended the principles there laid down to apply to cases of new applications.

[4] The Commissioner's action in this case was not based upon an error of law. Having found that it was not wholly unsupported by evidence, the burden is upon the applicant to show that it is either arbitrary or capricious. This burden he has failed to meet, but, on the contrary, it appears to the court that under the circumstances of this case the refusal of the permit was eminently proper.

The action of the Commissioner in disapproving the application is affirmed, and the bill will be dismissed.