In the Matter of IRVING HAIM et al., Individually and as Copartners Doing Business under the Name of International Distributors, Petitioners, against JOHN F. O'CONNELL et al., Individually and as Members of the State Liquor Authority, Respondents.

Supreme Court, Special Term, New York County, March 30, 1948.

*Sidney Krause* and *William B. Herlands* for petitioners.

*Alvin McKinley Sylvester* for State Liquor Authority.

EDER, J. Motion is denied and petition dismissed. Respondents, constituting the State Liquor Authority, disapproved petitioners' application ("International Distributors") for a renewal of their wholesale liquor license for the period commencing March 1, 1948, and terminating on February 28, 1949. Petitioners instituted this proceeding under article 78 of the Civil Practice Act, to review respondents' said determination and to annul the same and seek an order directing respondents to forthwith issue such license.

The record and briefs compose a file of formidable appearance, but stripped of their plethora of words, the basic position of petitioners and respondents simmers down to this: Petitioners contend that the determination by the authority, that petitioners were not fit and proper persons to be licensed was not based on reasonable grounds and thus was arbitrary, capricious and unreasonable. The converse is the assertion of the respondents.

It is settled by abundant authority that, in the absence of clear and convincing proof that an administrative body or public official has acted arbitrarily, unreasonably or capriciously, their action and determination will be sustained. Citation of authority is unnecessary; the rule has become elementary.

As respects the application for a license to traffic in alcoholic beverages, whether a particular license should be granted or withheld, the Legislature has vested in the liquor authority a wide discretion (*Matter of Yacht Club Catering* v. *Bruckman,* 276 N. Y. 44), and the discretionary power of the authority to refuse licenses has been uniformly upheld. In *Matter of Restaurants & Patisseries Longchamps* v. *O'Connell* (271 App. Div. 684, 687, affd. 296 N. Y. 888) the court said: " It is for the State Liquor Authority to determine whether the public interest will be served by a particular license. Unless it is made to appear that there is no substantial reason for the exercise of discretion, the courts will not interfere."

In the *Yacht Club* case (*supra*) the court said (p. 48) : " The Legislature has provided that certain kinds of business shall be lawful only when licensed by the Liquor Authority. Subject to rules embodied in the statute or otherwise fixed by law, the Liquor Authority, and the Liquor Authority alone, must determine when it should give, withhold or revoke its sanction."

If the respondents acted arbitrarily, unreasonably or capriciously herein, it must follow that their determination must be annulled; if not, same must be sustained.

Arbitrary, unreasonable and capricious, are terms which hold a close kinship and have been used in the same sense. Basically it is held to occur when one's action is based on no sound basis of reason and a will to rule without due regard to facts (*Park Slope Chevrolet* v. *Moss,* 27 N. Y. S. 2d 501; *Wisconsin Tel. Co.* v. *Public Service Comm.,* 232 Wis. 274; *Harris* v. *State Corp. Comm.,* 46 N. M. 352).

In disapproving the petitioners' application, which was for a renewal license, the respondents predicated the denial, after a consideration and appraisal of the evidence submitted to them, upon four findings of fact, and two additional reasons, which are contained in the order of disapproval, dated February 20, 1948.

The first finding was to the effect that petitioners falsely answered question 5 (a) and (b) in their original application, sworn to on March 25, 1944, and filed with the authority on April 18, 1944, which question reads as follows:

" 5. (a) State whether any license or permit issued under the Alcoholic Beverage Control Law of this State or of any other State or Country to the applicant or (if a partnership) to any partner or (if a corporation) to any officer, director or stockholder thereof, or to any corporation in which the applicant, any partner or any officer, director or stockholder was an officer,

director or stockholder has ever been revoked, cancelled, suspended or otherwise terminated.

" (b) If so, state what action was taken, the date thereof, the name of the former licensee or permitee and the address of the premises for which such license or permit was issued."

The finding was as follows: " In answer to the above question the licensees answered ' No ' and failed to disclose the fact that Irving Haim was the Treasurer and General Manager of the Sherwood Distillery Company at Cockeysville, Maryland, on March 31, 1923, on or about which date its Federal Alcohol permits were revoked for nine violations of the National Prohibition Act."

There is evidence that Haim had been the owner and treasurer and general manager of the Sherwood Distillery Company when its alcohol permits were revoked by the Federal Government for violations of the National Prohibition Act.

In connection with this finding it is argued by petitioners that the question was truthfully answered in view of its language, which did not call for information as to *Federal* permits, as the question read: " State whether any license or permit issued under the Alcoholic Beverage Control Law of *this State* or of any other State *or Country* to the applicant   *   *   *   has ever been revoked ".

And in this connection attention is directed that in the application for wholesale liquor license currently furnished to new applicants by the authority — as distinguished from the application form involved in the finding under discussion — the corresponding question reads: " State whether any license or permit issued under the Alcoholic Beverage Control laws of *this state* or *country* or any other state or country " and that the authority, by inserting the words " or country " has now indicated that it desires information as to *Federal* permits — a condition which did not prevail at the time that petitioners answered the unrevised question in the original application.

The premise and attempted distinction are viewed as unpersuasive.

It is very manifest, except to those who wish to appear deliberately and intentionally obtuse, that the authority, by the question, even in its unrevised form, was seeking all the information it could possibly obtain as to the background of the applicants in order to be able to make a proper determination if the petitioners were fit and proper persons to be licensed. The applicants well knew and undoubtedly understood and must be charged with knowing and understanding that the authority was

just as much concerned with knowing whether any license or permit had ever been revoked which had been issued by the Federal Government, as in any other instance, and it was the duty of petitioners to make full and complete answer and disclosure, knowing the plain import of the question, and not refrain from doing so. An attempt to equivocate in that connection carries its own implication.

The second finding rested on the failure of the petitioners to truthfully answer question 6 (a) and (b) in their application of 1944, which question reads as follows:

" 6. (a) State whether an application for any license or permit under the Alcoholic Beverage Control Law of this State or of any other State or Country was ever previously made by the applicant or (if a partnership) any of the partners or (if a corporation) any officer, director or stockholder, or by any corporation in which the applicant, any partner or any officer, director or stockholder was an officer, director or stockholder.

" (b) If so, state name of such applicant, address of premises, date of filing of application and disposition thereof."

The finding was as follows: " In answer to the above question the licensees answered ' No ' and failed to disclose the fact that Irving Haim was a director of the H. E. Pogue Distillery Company of Maysville, Kentucky, which in May, 1943 filed an application with the Federal Alcohol Tax Unit for F. A. A. basic permits. On August 11, 1943 the H. E. Pogue Distillery Company was served with a ' Notice of Contemplated Denial ' by the District Supervisor, A. T. U. 7th District."

There is evidence that petitioners neglected to set forth that Irving Haim had been an officer of the H. E. Pogue Distillery Company and that while he was an officer of that company it had made application for Federal alcohol permits.

In connection with this question and answer the petitioners again seek to play upon words by asserting that the question in its original form did not relate to applications made under the laws of this country, that is to say, the Federal laws, and submit as a decisive contention: " Consequently, the non-disclosure by International [petitioners] of the Pogue application was proper as a matter of law."

As has been previously pointed out the petitioners knew and were fully aware of the purport of this question and were required to make a full and complete disclosure of all information concerning their proper fitness for a license. Knowing the purpose and object of this question, a tacit evasion was as much untrue as a fully expressed false answer, verbal or written.

The third finding was based on the failure of Haim to disclose that he had been indicted by the Federal Grand Jury for the Eastern District of Louisiana, at New Orleans, which question reads as follows:

" 2. (a) Has the applicant or (if a partnership) any of the partners or (if a corporation) any of the officers, directors or stockholders ever been arrested or indicted for any crime or offense of any kind or served with a summons for violation of the Alcoholic Beverage Control Law?

" (b) If so, state date thereof, name of defendant and crime or offense involved."

The finding was as follows: " In answer to the above question the licensees answered ' No ' and failed to disclose the fact that Irving Haim was indicted, on February 11, 1932, by the Federal Grand Jury for the Eastern District of Louisiana, at New Orleans, for violations of the National Prohibition Act."

There is no dispute that the indictment named as one of the defendants an " Irving Haimowitz "; there is no dispute that the indictment also named as a defendant Haim's brother, Albert. Irving Haim knew of his brother's arrest and personally arranged for his brother's bail in connection with Albert's arrest. Irving Haim was represented by counsel in the defense of this indictment and he was previously known for years as Irving Haimowitz and was married under that name and received permission by court order to change his name from Irving Haimowitz to Irving Haim.

Petitioners' brief states: " The sole question of fact presented is whether Irving Haim, at the time that the 1944 application was made, knew of the existence of this indictment."

Petitioners' brief states that Irving Haim readily admitted that he tried to arrange bail for his brother some ten months before the indictment was found, but urges that this admission is without value as an indication that he was named in the indictment, as a defendant, when it was later returned.

In this connection the point is made that the circumstance is without probative value, and that if the court believes that there is evidence to substantiate the fact, that the Irving Haimowitz named in the indictment referred to Irving Haim, that there is not a word of evidence, credible or otherwise, to support the contention that Irving Haim knew of the existence of this indictment.

The authority was not required to support its finding by a preponderance of the credible evidence; it was sufficient if there was any form of legitimate basis therefor, and there is ample

justification for a finding and conclusion that the petitioner Irving Haim knew he was named in the indictment as one of the defendants under the name of Irving Haimowitz. The facts disclosed are sufficient circumstantial proof that he was informed, and, as well, knew he was so named as a defendant; and certainly enough for the authority to not unreasonably so conclude.

The fourth finding was to the effect that a false material statement was made in the 1944 application, in answer to question 11 (a) and (b) which reads as follows:

" 11 (a) State whether the applicant or (if a partnership) any of the partners, or (if a corporation) any of the officers, directors or stockholders has ever been known by any other name or names,

" (b) If so, state such former name or names and the reason for changing the same."

The finding was that in answer to the above question the licensees answered ' No ' and failed to disclose that Irving Haim was born " Isidore Haimowitz " and that he was permitted by court order to change his name from Irving Haimowitz to Irving Haim and failed to disclose that he used the alias " Irving Fox " from March, 1929, to about January, 1930, in connection with the formation of or acquisition of an alcohol corporation which had been closed by the Federal Government for violations of the National Prohibition Act.

In petitioners' brief it is stated that Irving Haim during his entire *business* career was known by the name Irving Haim and that " It did not occur to Mr. Haim that the Authority was interested in a name other than that by which he was known during his entire business life."

Well aware that the authority was seeking to obtain all the information it could about the background of the applicants, and the clear and explicit language of the interrogatory and its manifest purpose, the above statement is advanced as an excuse warranting and justifying the failure to disclose his true name was " Isidore Haimowitz " until changed by court order to Irving Haim.

If he was as naive as that (which is extremely doubtful), the fact remains he did not give a truthful answer.

As to the use of the name " Irving Fox ", Haim denies ever using it. There is a dispute as to this by the authority and the evidence is rather vague that he did use that name. But it is immaterial, there being sufficient evidence he failed to make a truthful answer, as mentioned *supra.*

It is also undisputed that the petitioners Lilen Sanger, Abbe Sanger and Pearl Rappaport were known by other names, which were not revealed.

In addition the application was disapproved for two additional reasons, viz., (1) that Irving Haim has been associated in the liquor business with known and notorious bootleggers, racketeers and ex-convicts, including Phil Kastel and Frank Costello.

There is no denial as to the fact of their conviction some time ago; also there is evidence to show Haim's association with them. As to his association with Kastel, petitioners' brief states that their business relations were completely legitimate. As to Costello, it is also stated that the relation involved authorization to make a contract with Costello as a promotion agent for an English concern and involved the indorsement of a series of promissory notes, by both Haim and Costello, which notes were given by Kastel and which it is said was a legitimate business transaction.

Much was said upon the argument concerning Costello, who was referred to as Public Enemy No. 1, but it seems strange that if such has any foundation in fact, that no action has been taken in that regard by the police and public prosecutor, or by any public authority, with all the resources at their command, to protect the public. If the object was to create an impression upon the court in its ultimate disposition of the application there has been no evidence adduced to warrant it, and were this finding alone the basis of refusal to issue the license, I would deem the action of the authority as arbitrary as there is no proof that said Costello offended any statute or violated any law since his conviction for a misdemeanor committed thirty-three years ago.

There is another feature to which reference should be made. It is that the authority previously granted licenses with knowledge of the facts and that the respondents may not now be heard to utilize them to deny petitioners the license sought.

Upon the argument petitioners' counsel did not claim that this constituted an estoppel and frankly disavowed it but claimed the subsequent refusal of the respondents to issue a license was a determination arbitrary or capricious.

I think there are two answers to this. Firstly as respondents' counsel stated on the argument, the authority is under no duty to make an investigation but may rely on the statements made by the applicants, under oath, and stated the authority receives 60,000 applications a year. To investigate every application in all details would be a superhuman task; he stated there are

instances when investigation is made, which takes a long time to fully complete and until fully completed a license may be issued based on the sworn statements of the applicant.

Secondly, an application for a renewal is to be regarded in exactly the same manner as an application for a new license (*Longchamps* case, 271 App. Div. 684 *supra*). In each instance the applicant is bound to and must make truthful answers and full and complete disclosures and a failure to do so warrants a denial of the application. Thus, regardless of what occurred on prior occasions, upon making the instant application the petitioners were in duty bound to answer truthfully and completely, and this they failed to do, admittedly in some instances, assuming, *arguendo,* it was done unintentionally.

In either instance the result was the same: the answer was untrue and there was not a full and complete disclosure made, thus preventing and depriving the authority of the benefit of full and complete information concerning the petitioners, their background and activities in enabling them to make a proper determination as to petitioners' fitness to be licensed.

In the light of the record it cannot be said that in refusing to issue a license to petitioners that the respondents acted arbitrarily, unreasonably or capriciously. It is enough to sustain the determination of the respondents if one finding is supported by the record, and more than one finding is amply supported by the record, as hitherto shown.

There exists no basis for this court reversing or annulling the determination of the respondents and the application is accordingly denied and the petition dismissed. Settle order.