2002 WY 91

**In the Matter of the Worker's Compen-
sation Claim of Beri NEWMAN,
Appellant (Petitioner),**

v.

**STATE of Wyoming ex rel. WYOMING
WORKERS' SAFETY AND COMPEN-
SATION DIVISION, Appellee (Respon-
dent).**

No. 01–191.

Supreme Court of Wyoming.

June 19, 2002.

Steven R. Helling, Casper, Wyoming, Representing Appellant.

Hoke MacMillan, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald L. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   Beri Newman injured her neck and back while working at a restaurant in March of 1998 and received worker's compensation benefits for chiropractic treatments from March to November 1998.  In July 1999, she again sought chiropractic care, this time for headaches and double vision.  The Wyoming Workers' Safety and Compensation Division (division) and the Office of Administrative Hearings (OAH) concluded these symptoms did not result from the original accident and, therefore, were not work related.  The district court affirmed the administrative decision.  We affirm and clarify the appropriate standard of review.

### ISSUES

[¶ 2]   We rephrase the issues as follows:

1.   What is the proper standard of review when both the claimant and the division present evidence at a contested case hearing?

2.   Does the record support the hearing examiner's determination that Ms. Newman's testimony lacked credibility and she failed to prove her July 1999 physical complaints/symptoms were caused by her March 1998 work-related accident?

3.   In denying benefits, did the hearing examiner err in applying Wyo. Stat. Ann. § 27–14–603(a) (LexisNexis 2001), which pertains to injury occurring over a substantial time period?

### FACTS

[¶ 3]   Ms. Newman was injured on March 13, 1998, while working at JB's Restaurant in Casper.  She sought chiropractic care from H.R. Graber, D.C. In the written office questionnaire, Ms. Newman stated she had sprained her back while carrying "tray after tray" of dishes and had felt pain in her lower back immediately after the accident.  In answer to the form's fill-in-the-blank questions, she indicated she never had headaches or vision problems but presently had low back problems, pain between her shoulders, neck

problems, sore and weak muscles, and walking problems.  In another form entitled Confidential Patient Case History, she indicated she had an occasional headache and had been previously treated by Dr. Graber in 1994 for neck problems.  The insurance claim forms Dr. Graber submitted to the division indicated Ms. Newman received treatment from March through November of 1998 for low back pain and a lumbosacral sprain, and the division paid benefits for this treatment.  Dr. Graber released Ms. Newman from his care on November 18, 1998, recording in his Daily Notes Report that her condition was progressing as anticipated and she had made satisfactory progress and was ready for discharge.

[¶ 4]   In July of 1999, Ms. Newman returned to Dr. Graber for care.  On or about July 14, 1999, he wrote a letter to the division stating he had previously treated Ms. Newman for a work-related injury for low back pain, lumbosacral subluxation, multiple cervical subluxations, cervicobrachial syndrome, lumbosacral sprain/strain, sacral/coccyx subluxation, and cervical neck pain.  He further stated that Ms. Newman returned to his office on July 7, 1999, with symptoms similar to her March 1998 complaints and was continuing with treatment resulting from her original work-related accident.  Dr. Graber did not mention in this letter that Ms. Newman had returned complaining of severe intermittent headaches and double vision, which were symptoms she had not experienced during the period of her prior treatment.  The division denied benefits for several chiropractic bills stating variously that the services were not related to the original worker's compensation injury of March 13, 1998, "to the back" or "to the back and neck."  The division based its denial of benefits in large part on an August 19, 1999, medical review panel recommendation.  The three chiropractors who participated on the panel questioned the relationship between the new problems and the initial injury and opined the most recent symptoms were not a continuation of the previous injury.

[¶ 5]   Ms. Newman appealed the denials.  The OAH held a contested case hearing on January 20, 2000, which was continued to

April 13, 2000, for completion. It issued its Order Denying Benefits on June 16, 2000, concluding Ms. Newman had failed to prove by a preponderance of the evidence that her headaches and double vision were an injury as that term is defined in Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2001) and an injury which occurred over a substantial period of time pursuant to § 27–14–603(a). In reaching this determination, the hearing examiner found Ms. Newman's testimony lacked credibility because it was inconsistent with her March 1998 injury reports. Similarly, she concluded the reports of Dr. Graber and Don Thai, M.D., an independent medical examiner, were of little evidentiary value because they were based on Ms. Newman's version of the events.

[¶ 6] Ms. Newman filed a petition for review pursuant to W.R.A.P. 12.01. On July 27, 2001, the district court issued a detailed decision letter and Order Affirming Agency Decision. It held the hearing examiner's decision was supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Ms. Newman appeals from this order.

### STANDARD OF REVIEW

*Appeal from District Court's Review*

[¶ 7] "When considering an appeal from a district court's review of agency action, we accord no special deference to the district court's conclusions. Instead, we review the case as if it had come directly to us from the administrative agency." *French v. Amax Coal West*, 960 P.2d 1023, 1027 (Wyo. 1998) (citation omitted).

*Applicable Standard—Arbitrary or Capricious or Substantial Evidence?*

[¶ 8] In appeals of agency decisions, both the court and the parties have historically treated the applicable standard of review in an imprecise and, consequently, often inconsistent manner. Specifically, with regard to worker's compensation cases appealed pursuant to the Wyoming Administrative Procedure Act (WAPA), Wyo. Stat. Ann. § 16–3–114 (LexisNexis 2001), it appears there has

been an unintentional and incremental muddling of the arbitrary or capricious standard and the substantial evidence test when agency decisions are reviewed. The blurring of these concepts has led to the citation of every possible administrative review standard in a scattergun effort to hit the target. This particular case is no exception.

[¶ 9] Section 16–3–114(c) (emphasis added) provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) *Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;*

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) *Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.*

Despite being separately expressed in the statute, these two tests have come to be used interchangeably by courts and litigants alike so as to hardly have independent meanings, a result we conclude was not intended by the legislature. "In interpreting a statute, every word, clause and sentence must be considered so that no part will be rendered inoperative or superfluous. Each element must be given meaning." *State ex rel. Wyoming*

*Worker's Compensation Division v. Maho-ney*, 798 P.2d 836, 838 (Wyo.1990) (citation omitted); *see also Merkison v. State*, 996 P.2d 1138, 1142 (Wyo.2000).

[¶ 10] In what can be viewed as a first step in the direction of addressing the problem we hope to cure today, this court noted "[t]he relationship between the substantial evidence rule as it pertains in administrative proceedings and the [arbitrary or capricious] rule that is used when the agency concludes that there has been a failure of proof has produced some consternation." *Helm v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 982 P.2d 1236, 1240 (Wyo.1999). We attempt, in this opinion, to provide further clarification of these rules for the benefit of litigants, counsel, administrative agencies, hearing examiners, and the district courts.

[¶ 11] We are not the only jurisdiction grappling with this conundrum:

There has been confusion under the Federal Administrative Procedure Act in distinguishing the substantial evidence test from the arbitrary and capricious standard. Thus, one federal court has noted "an emerging consensus of the Courts of Appeals" that the distinction between the two is "largely semantic." *Pacific Legal Foundation v. Department of Transportation*, 593 F.2d 1338, 1343, n. 35 (D.C.Cir.), *cert denied*, 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38 (1979). We conclude that under the APA ... the sole determination by the reviewing court as to issues of fact before the agency is whether there was substantial evidence in the agency record to support the agency decision.

*State Board of Health of Commonwealth of Virginia v. Godfrey*, 223 Va. 423, 290 S.E.2d 875, 881 (1982). Likewise, the District of Columbia Circuit Court noted the tests were all but indistinguishable when used to assess the factual support of a decision:

The district court stated, altogether properly, that it would "review the whole record of the administrative action and determine whether that action was arbitrary, capricious, and an abuse of discretion not in accordance with law." *See Caiola v. Carroll*, Civ. Action No. 85–3767, slip

op. at 6 (D.D.C. Sept. 30, 1986); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). While the district court held that the agency's decision was supported by "substantial evidence," we note that the distinction between the "substantial evidence" standard and the "arbitrary and capricious" standard has been described as "largely semantic." *See Association of Data Processing Serv. Orgs., Inc. v. Board of Governors of the Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C.Cir.1984) ("[W]hen the arbitrary and capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense ...."); *see also* B. Schwartz, *Administrative Law*, § 10.15 at 614 (2d ed.1984) (quoting *Pell v. Board of Education*, 34 N.Y.2d 222, 231, 356 N.Y.S.2d 833, 313 N.E.2d 321 (1974) ("Rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard.")).

The court's role, therefore, is to review the whole administrative record to determine whether there was a rational basis for the agency's action.

*Caiola v. Carroll*, 851 F.2d 395, 398 (D.C.Cir. 1988); *see also Midtec Paper Corporation v. United States*, 857 F.2d 1487, 1498 (D.C.Cir. 1988) (holding that, when the arbitrary and capricious standard is performing the function of assuring factual support, there is no substantive difference between what it requires and what would be required of the substantial evidence test); *Nicolet High School District v. Nicolet Education Association*, 118 Wis.2d 707, 348 N.W.2d 175, 179 (1984) (" '[I]n almost any case that comes to mind, a decision ... supported by substantial evidence ordinarily would be held not to be arbitrary or capricious.' [*Westring v. James*, 71 Wis.2d 462,] 476, 238 N.W.2d 695 [(1976)].... [T]he converse [is] true also, because arbitrary action can be viewed as

that without a rational basis or, in other words, lacking any substantial evidence supporting the decision"); *Amusement and Music Operators Association v. Copyright Royalty Tribunal*, 676 F.2d 1144, 1152 (7th Cir. 1982) (holding the distinction between the arbitrary or capricious standard and the substantial evidence test is without practical significance).

[¶ 12] In this jurisdiction, we have described the substantial evidence test in cases where factual findings are challenged as follows:

> In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*State ex rel. Wyoming Workers' Safety and Compensation Division v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001) (citations omitted). However, in cases where the agency concludes the party with the burden of proof has failed to prove its case, we have applied the arbitrary or capricious standard:

> A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" language of Wyo. Stat. § 16–3–114(c)(ii) (1990).

*Pederson v. State ex rel. Wyoming Workers' Compensation Division*, 939 P.2d 740, 742 (Wyo.1997) (citation omitted).

[¶ 13] This court began utilizing the arbitrary or capricious test long before the passage of the WAPA to review the broad exercise of discretionary powers by administrative entities.

In ordinary cases the board is vested with a wide discretion in the matter of renewing leases. That discretion is doubtless to be exercised reasonably rather than arbitrarily, and with a due regard to the rights of the lessee as well as the interest of the state, taking into consideration all the statutory regulations relating to the leasing of state lands. It is probable, however, that the discretion is such that, except in case of fraud or grave abuse resulting in manifest wrong and injustice, the courts would not feel warranted in interfering with its exercise.

*Cooper v. McCormick*, 10 Wyo. 379, 69 P. 301, 303 (1902) (citation omitted); *see also Baker v. Brown*, 12 Wyo. 198, 74 P. 94, 96 (1903). These early cases apparently did not involve a formal administrative hearing or thorough records. *See Bunten v. Rock Springs Grazing Ass'n*, 29 Wyo. 461, 215 P. 244, 250 (1923) (holding the taxpayer is entitled to the assessor's and the board of equalization's honest judgments in fixing the value of property; they will not be permitted to do so in an arbitrary, capricious, and fraudulent manner, and courts will restrain them from becoming despotic); *Chicago, B. & Q.R. Co. v. Byron School Dist. No. 1*, 37 Wyo. 259, 260 P. 537, 539 (1927) (" 'Where ... the action of the trustees or of the county superintendent is clearly shown to be so unreasonable and unjust to those complaining as to amount to oppression and a wanton disregard of their rights and interests, then a court of equity will interfere to set aside such unjust and oppressive decision and grant such other relief as may be necessary and proper.' " Quoting *Fisher v. Birkey*, 299 Ill. 145, 132 N.E. 498, 500 (1921)). This is consistent with authority that "[i]nformal agency action is reviewed utilizing [the arbitrary or capricious] standard." *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 643 (10th Cir.1990); *see also* 2 Am.Jur.2d *Administrative Law* § 529 at 518 (1994) ("The law is also reasonably clear that the arbitrary or capricious standard governs review of agency action in instances where no hearing or formal findings on a record are required, and there is no statutory requirement of a different test").

[¶ 14] In *Banzhaf v. Swan Co.*, 60 Wyo. 201, 148 P.2d 225, 228 (1944), involving state

land lease renewals, this court interpreted a provision of the applicable statutes providing for *de novo* judicial review of administrative action as follows:

[T]he trial "de novo" as mentioned in Section 91–306, W.R.S.1931, is simply limited to a determination on the part of the District Court whether on the facts proven there was "an illegal exercise" of the Board's discretion, a case of fraud, or a "grave abuse of such discretion[."] Unless one of these three elements should appear the action of the Board should not be disturbed.

*See also Rayburne v. Queen,* 78 Wyo. 359, 326 P.2d 1108, 1111 (1958).

[¶ 15] By the late 1950s and early 1960s, the burden of proving arbitrary or capricious action was clarified:

The burden of proof to show the refusal to be arbitrary or capricious is on the applicant. *Halpern v. Andrews,* D.C.Pa., 21 F.2d 969. *In Application of Haim,* 195 Misc. 612, 88 N.Y.S.2d 840, 842, the court stated:

It is settled by abundant authority that, in the absence of clear and convincing proof that an administrative body or public official has acted arbitrarily, unreasonably or capriciously, their action and determination will be sustained. Citation of authority is unnecessary; the rule has become elementary.

*Whitesides v. Council of City of Cheyenne,* 78 Wyo. 80, 319 P.2d 520, 526 (1957).

We have repeatedly said the courts are warranted in setting aside action of an administrative agency only where its action is arbitrary or fraudulent or where there is an illegal exercise of discretion; and the burden of proving arbitrary, illegal or fraudulent action is on the complainant. *Marathon Oil Company v. Welch,* 379 P.2d 832, 836 (Wyo.1963). Also in the 1960s, this court began to establish standards regarding sufficient information to support an administrative decision:

This court, in the *Fremont County* case [*School District No. 9, in County of Fremont v. District Boundary Board in and for Fremont County,* 351 P.2d 106, 111 (Wyo.1960)] made it clear that a district boundary board must have before it sufficient information upon which it may properly find that a change is to the best interests of all the people concerned. The decision of the board must not only be based upon substantial evidence but also the evidence must relate to both the annexed and the annexing areas. Otherwise ... the procedure tends to be "of an arbitrary nature."

*Clear Creek Cattle Co. v. Davis,* 384 P.2d 719, 720 (Wyo.1963); *see also Monahan v. Board of Trustees of Elementary School District No. 9, County of Fremont,* 486 P.2d 235, 237 (Wyo.1971).

[¶ 16] After the WAPA statutory standards of review became effective in 1966, we applied those more explicit review standards as seen from the following worker's compensation case:

We have held it essential to surviving judicial review that the record of a contested agency action contain such factual findings as would permit a court to follow the agency's reasoning from the evidentiary facts on record to its eventual legal conclusions. *Larsen v. Oil and Gas Conservation Comm'n,* 569 P.2d 87, 90–91 (Wyo. 1977); *Powell v. Board of Trustees, Crook County School District No. 1,* 550 P.2d 1112, 1120 (Wyo.1976). Similarly, we have held that a contested case hearing must provide, and the record of that proceeding must document, information sufficient to the making of a reasonable decision. Absent such information, the agency decision must be set aside as arbitrary. *Western Radio Communications, Inc. v. Two–Way Radio Service, Inc.,* 718 P.2d 15, 20 (Wyo. 1986); *Monahan v. Board of Trustees, Elementary School District No. 9,* 486 P.2d 235, 237 (Wyo.1971). The need for such strict compliance with statutory provisions relating to the content of the agency record derives largely from a need to ascertain whether contested case hearings actually provide statutorily mandated procedural protections. To assure the due process protections inherent in the WAPA's statutory scheme will be given

effect, this court requires strict compliance with those procedural provisions. *Jackson v. State ex rel. Wyoming Workers' Compensation Division*, 786 P.2d 874, 878 (Wyo.1990); *see also Mekss v. Wyoming Girls' School, State of Wyoming*, 813 P.2d 185, 201–02 (Wyo.1991).

[¶ 17]   In 1995, in the case *City of Casper v. Utech*, 895 P.2d 449, 452 (Wyo.1995), we first definitively held the arbitrary or capricious test should apply exclusively in circumstances where a claimant is found to have failed to carry his burden of proof:

> [W]e are satisfied such cases come within the argument ... with respect to ... the sufficiency of the evidence, and the case must be considered under the arbitrary, capricious, and contrary to law language of Wyo. Stat. § 16–3–114(c)(ii) (1990).... An agency's decision totally contrary to the evidence in the record is subject to such a test. We would have no equivocation in reversing and remanding such a decision.

This standard of review was applied in *Pederson*, 939 P.2d at 742, and consistently thereafter in worker's compensation cases where the claimant failed to carry the burden of proof. *See Bruns v. TW Services, Inc.*, 2001 WY 127, ¶ 14, 36 P.3d 608, ¶ 14 (Wyo. 2001); *Rice v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2001 WY 21, ¶¶ 10–11, 19 P.3d 508, ¶¶ 10–11 (Wyo. 2001); *Sheth v. State ex rel. Wyoming Workers' Compensation Division*, 11 P.3d 375, 378 (Wyo.2000); *Brees v. Gulley Enterprises, Inc.*, 6 P.3d 128, 132 (Wyo.2000); *Beitel v. State ex rel. Wyoming Workers' Compensation Division*, 991 P.2d 1242, 1244–45 (Wyo. 1999); *Clark v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 934 P.2d 1269, 1270–71 (Wyo.1997).

■ [¶ 18]   Neither the division nor litigants have been consistent in following these precedents which leads to the appellants attacking and the appellees defending the factual basis for an agency decision relying upon different standards of review. Thus, it is important that we resolve whether these tests as applied to factual findings are substantively distinct or, as other jurisdictions have concluded, whether the difference is in name only. We must also revisit our holdings

which may have implied that the standard of review is dependent on whether a party below was found to have failed to carry its burden of proof.

■ [¶ 19]   Both tests require review of the entire record. The statute specifically provides review of the whole record with regard to the substantial evidence test. The arbitrary or capricious test requires the reviewing court to determine whether the agency reasonably could have made its finding and order based **upon all the evidence before it.**

[¶ 20]   The substantial evidence test seems to require more of an agency than does the arbitrary or capricious standard.

In *Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136, 143 [87 S.Ct. 1507, 18 L.Ed.2d 681] (1967), the Court said that the substantial evidence test provided "a considerably more generous judicial review than the 'arbitrary and capricious' test." ... Four Justices emphasized the more demanding nature of the substantial evidence test in *Industrial Union Department v. American Petroleum Institute*, 448 U.S. 607, 705 [100 S.Ct. 2844, 65 L.Ed.2d 1010] (1980): "Careful performance of this task is especially important when Congress has imposed the comparatively rigorous 'substantial evidence' standard." Finally, a unanimous Court characterized the arbitrary and capricious test as "more lenient" than the substantial evidence test in *American Paper Institute v. American Electric Power Service Corp.*, 461 U.S. 402, 412 n. 7 [103 S.Ct. 1921, 76 L.Ed.2d 22] (1983).

Unfortunately, while the Court consistently characterizes the arbitrary and capricious test as less demanding than the substantial evidence test, the Court has never explained the difference between the two. Since the substantial evidence test is extremely deferential, circuit courts have experienced difficulty applying the distinction the Court continues to draw. Circuit courts frequently treat the two tests as identical, referring to their "tendency to converge" and to the distinction between the two as "largely semantic."

2 Richard J. Pierce, Jr., Administrative Law Treatise § 11.4 at 807 (4th ed.2002); *see also* 5 Jacob A. Stein et al., Administrative Law § 51.02 at 51–60 to 51–89, § 51.03 (1995). It can be argued that the substantial evidence test demands more of the agency because it requires evidence in the record to support the decision. It also suggests the corollary that the arbitrary or capricious standard is more lenient and deferential to the agency than the substantial evidence test because it requires only that there be a rational basis for the agency's decision. *See Howe v. Health Facilities Appeals Board,* 20 Mass. App.Ct. 531, 481 N.E.2d 510, 513 (1985) (holding that, under the substantial evidence test, the agency decision must rest on such evidence a reasonable mind might accept as adequate to support a conclusion, but, under the arguably more lenient arbitrary or capricious test, there needs to be only a rational basis for the decision); *Adam Smith Enterprises, Inc. v. State Department of Environmental Regulation,* 553 So.2d 1260, 1273 (Fla.Dist.Ct.App.1989) (holding that, "under this arbitrary and capricious standard, . . . an agency is to be subjected only to the most rudimentary command of rationality").

[¶ 21] When the soundness of a factual finding is challenged, it is unclear what rational purpose supports the different levels of scrutiny of an administrative action. In practice, the application of the standards has the appearance, if not the effect, of treating an appealing agency and an appealing claimant disparately to no definable end. A plausible explanation is found in *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Cmwlth. 436, 550 A.2d 1364, 1365 (1988), where the substantial evidence test was held to apply to all reviews of administrative findings of fact. The Pennsylvania court recognized an exception,

where the burdened party is the only party to present evidence and does not prevail before the agency, the "substantial evidence" test falters. If no evidence was presented to support the prevailing party, there is no evidence upon which to apply the "substantial evidence" test: *i.e.,* it is impossible to find substantial evidence to support a position for which no evidence

was introduced. In such cases, therefore, the appropriate scope of review . . . is whether the agency erred as a matter of law or capriciously disregarded competent evidence. . . .

. . . At the very least the findings and conclusions of the fact-finder must have a rational basis in the evidence of record and demonstrate an appreciation and correct application of underlying principles of substantive law to that evidence. . . .

. . . In all matters, however, where both parties present evidence, the agency's determination will be reviewed under the "substantial evidence" test. . . .

*Russell,* 550 A.2d at 1365–66 (quoting *Jasper v. Workmen's Compensation Appeal Board,* 498 Pa. 263, 445 A.2d 1212, 1213 (1982)). The opinion also cites examples of holdings reflecting arbitrary or capricious agency action when only the burdened party presented evidence and did not prevail including situations where an agency willfully disregarded otherwise credible evidence or entered internally inconsistent findings of fact and conclusions of law.

[¶ 22] The distinction made by the Pennsylvania court is logical. When both parties present evidence and one seeks review of the factual basis for the agency decision, there is no identifiable justification to subject them to different standards of review. However, when only the burdened party presents evidence and does not prevail, the question becomes whether the agency decision was rational and was arrived at properly because it clearly cannot be based on the evidence presented. On this reasoning, we hold the substantial evidence test is the appropriate standard of review in appeals from WAPA contested case proceedings when factual findings are involved and both parties submit evidence. We further hold, when only the party with the burden of proof submits evidence in the contested case proceeding and that party does not ultimately prevail, the arbitrary or capricious standard governs the judicial review of that agency decision.

**[¶ 23]** Despite this holding, even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision could still be found to be arbitrary or capricious for other reasons. The arbitrary or capricious standard works as a "safety net" to catch agency action which prejudices a party's substantial rights or which may be contrary to the other WAPA review standards yet is not easily categorized or fit to any one particular standard.[1] Section 16–3–114(c)(ii); *Community Savings and Loan Association of College Station, Texas v. Vandygriff*, 630 S.W.2d 457, 459 n. 3 (Tex.App.1982). For example, the administrative record may be replete with evidence supporting the decision, and yet the agency may have willfully discounted credible evidence, refused to admit certain testimony or documentary exhibits, or failed to provide findings of fact or conclusions of law. This listing is demonstrative and not intended, by any means, as an inclusive catalog of all possible circumstances. However, when both parties present evidence, the substantial evidence test should be utilized to review the soundness of the agency's factual findings.

### Review of the Whole Record

**[¶ 24]** We also take this opportunity to make an additional clarification. In the past, occasionally, but not consistently, we have recited the following substantial evidence standard:

"If, *after examining the entire record*, we find substantial evidence to support the agency's finding, we will not substitute our own judgment for that of the agency. Instead, we will uphold the agency's finding.... In addition, *we examine only the evidence which favors the prevailing party, allowing every favorable inference, while omitting consideration of*

*any conflicting evidence.* Matter of Injury to Carpenter, 736 P.2d 311, 312 (Wyo. 1987)."

To the same effect are *Jaqua v. State ex rel. Wyoming Workers' Compensation Div.*, 873 P.2d 1219, 1220–21 (Wyo.1994); *Bearden v. State ex rel. Wyoming Workers' Compensation Div.*, 868 P.2d 268, 269 (Wyo.1994).... 

*Wyoming Steel & Fab, Inc. v. Robles*, 882 P.2d 873, 876 (Wyo.1994) (quoting *Sinclair Trucking v. Bailey*, 848 P.2d 1349, 1351 (Wyo.1993)) (emphasis added). This statement is obviously internally inconsistent. The mandate to review the entire record cannot possibly be accomplished if only the evidence favorable to the prevailing party is examined. This "prevailing party's evidence" concept developed in the context of judicial review of civil cases and, without careful consideration of the administrative law doctrine, was intermittently utilized in the review of administrative decisions. *Mountain States Telephone & Telegraph Company v. Carpenter*, 736 P.2d 311, 312 (Wyo.1987) (worker's compensation); *Abas v. State ex rel. Wyoming Worker's Compensation Division*, 701 P.2d 1153, 1156 (Wyo. 1985), *overruled on other grounds by Parnell v. State ex rel. Wyoming Worker's Compensation Division*, 735 P.2d 1367 (Wyo.1987) (worker's compensation); *Stockton v. Sowerwine*, 690 P.2d 1202, 1205 (Wyo.1984) (real estate transaction).

**[¶ 25]** The WAPA, effective January 1, 1966, initially did not address how the record should be considered in the conduct of judicial review.[2] 1965 Wyo. Sess. Laws ch. 108; *Dubois Telephone Exchange v. Mountain States Telephone and Telegraph Company*, 429 P.2d 812, 816 n. 1 (Wyo.1967). However, the statute was modified:

1. (1) Constitutional right, power, privilege, or immunity; (2) in excess of statutory jurisdiction, authority, or limitations or lacking statutory right; (3) without observance of procedure required by law; or (4) unsupported by substantial evidence. Section 16–3–114(c)(ii).

2.
  (c) The Court's review pursuant to the provisions of this Section shall be limited to a determination whether or not: (1) The agency acted

without or in excess of its powers; (2) the decision or other agency action was procured by fraud; (3) the decision or other agency action is in conformity with law; (4) the findings of facts in issue in a contested case are supported by substantial evidence; and (5) the decision or other agency action is arbitrary, capricious or characterized by abuse of discretion.
  1965 Wyo. Sess. Laws ch. 108, § 14(c).

This subsection was amended, effective May 25, 1979, to require agency action, findings and conclusions to be supported by substantial evidence, but also to provide for a review of the "whole record." (FN1)[3] Under this standard, we do not examine the record only to determine if there is substantial evidence to support the Board's decision, but we must also examine the conflicting evidence to determine if the Board could reasonably have made its findings and order upon all of the evidence before it.

*Board of Trustees of School District No. 4, Big Horn County v. Colwell*, 611 P.2d 427, 429 (Wyo.1980). Continued reliance in administrative appeals on the "prevailing party's evidence" clause after enactment of the WAPA was perhaps questionable since the statute established clear standards for judicial review of administrative actions. However, after the 1979 amendment specifically provided for review of the "whole" record, application of the "prevailing party's evidence" clause was clearly contrary to the law. We conclude the "prevailing party's evidence" clause has no place in judicial review of administrative action and shall no longer be considered or applied in contested case decisions subject to the WAPA.

### Findings of Fact

■■■ [¶ 26] When factual findings are challenged, we will affirm those findings if they are supported by substantial evidence.

In contested cases conducted before administrative agencies, the deference that normally is accorded the findings of fact by a trial court is extended to the administrative agency, and we do not adjust the decision of the agency unless it is clearly contrary to the overwhelming weight of the evidence on record. *Mekss [v. Wyoming Girls' School, State of Wyoming*, 813 P.2d 185 (Wyo.1991)]; *State ex rel. Wyoming Workers' Compensation Div. v. Brown*, 805 P.2d 830 (Wyo.1991). This is so because, in such an instance, the administrative body is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses. *Gilmore v. Oil and Gas Conservation Comm'n*, 642 P.2d 773 (Wyo.1982).

*Wyoming Steel & Fab, Inc.*, 882 P.2d at 875.

### DISCUSSION

### *Was the OAH Decision Supported by Substantial Evidence?*

■■■ [¶ 27] In this case, the division agreed that the initial claims made by Ms. Newman were compensable.

The Division's uncontested award of benefits is not a final adjudication that precludes the Division from challenging future benefits. The statutory language of the Wyoming Workers' Compensation Act confers finality on the benefits paid to the employee through uncontested determinations, subject to the exceptions found in Wyo. Stat. Ann. § 27–14–605. The statutory language, however, does not guarantee a claimant future benefits on the basis of a prior award nor does public policy favor the payment of an unjustified work-

---

3. Footnote one reads as follows:
    Section 9–4–114(c), W.S.1977, 1979 Cum. Supp., provides:
    (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
    (i) Compel agency action unlawfully withheld or unreasonably delayed; and
    (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
    (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
    (B) Contrary to constitutional right, power, privilege or immunity;
    (C) In excess of statutory jurisdiction, authority or limitations, or lacking statutory right;
    (D) Without observance of procedure required by law; or
    (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
    *Board of Trustees of School District No. 4, Big Horn County v. Colwell*, 611 P.2d 427, 429 n. 1 (Wyo.1980)

er's compensation claim. *Therefore, an employee/claimant must prove that he was entitled to receive benefits for all outstanding claims despite previous awards for the same injury.* The doctrines of res judicata and collateral estoppel apply in workers' compensation claims when adjudicated before the Office of Administrative Hearings. Subject to the provisions of Wyo. Stat. Ann. § 27–14–605(a), the Division is estopped from redetermining the compensability of an injury as it relates to claims which have been approved or paid.

*Hall v. State ex rel. Wyoming Workers' Compensation Division,* 2001 WY 136, ¶ 14, 37 P.3d 373, ¶ 14 (Wyo.2001) (citations omitted & emphasis added); *see also Tenorio v. State ex rel. Wyoming Workers' Compensation Division,* 931 P.2d 234, 239 (Wyo.1997). "Injury" is defined as

any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Section 27–14–102(a)(xi). "A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence, including that the claimed injury arose out of and in the course of employment." *Clark v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2001 WY 132, ¶ 19, 36 P.3d 1145, ¶ 19 (Wyo. 2001) (citation omitted). Therefore, it was Ms. Newman's burden to prove the new symptoms of severe intermittent headaches and double vision reported in July of 1999 were work-related injuries within the definition of § 27–14–102(a)(xi). The hearing examiner determined Ms. Newman failed in this endeavor. We must determine whether

there is substantial evidence to support the hearing examiner's conclusion.

[¶ 28] The hearing examiner's findings of fact reflect Dr. Graber testified in his deposition that Ms. Newman hurt her back when she fell carrying a tray of dishes and she complained on March 17, 1998, of intermittent headaches over her entire head. He also testified he ceased treating Ms. Newman on November 18, 1998, but she returned for treatment of severe intermittent headaches and double vision affecting her balance on July 7, 1999. Dr. Graber relied on the presence of headaches on March 17, 1998, to support the interrelatedness of the original injury to the headaches Ms. Newman experienced on July 7, 1999.

[¶ 29] The hearing examiner found Dr. Graber's narrative report of the initial office visit listed only "headache" under patient symptoms and did not contain any reference to a fall and his handwritten notes[4] did not indicate headaches as a subjective complaint until September 9, 1998. That entry indicated a new symptom of minimal intermittent headaches over the entire head. In addition, when Dr. Graber was asked if he obtained additional history from Ms. Newman about the events between November 1998 and July 1999, he testified he was sure he would have made some examinations before commencing treatment again but could not provide documentation.

[¶ 30] The hearing examiner ordered an independent medical examination by Dr. Thai, a neurologist. The examination report reflected that, prior to the March 13, 1998, accident, Ms. Newman did not have a significant history of headaches and Dr. Thai could only make inferences from the information Ms. Newman gave him and what he could gather from the examination because he did not examine her at the time of the injury. His impression was that she did not likely suffer from a significant postconcussive syndrome but a radiculopathy of C6 might be responsible for her continued neck pain. He indicated there are two possible types of headaches: post-traumatic migraine, which

---

**4.** The notes were dated March 17, 1998, through April 24, 1998, and May 13, 1998, through September 1, 1998.

follows a concussion; and occipital neuralgia, which can be related to neck trauma. He also stated double vision can result from right postural lateral rectus palsy caused by a trauma to the eye through various conditions such as diabetes but discounted this possibility based on the "mechanism"—the fall—of her trauma. In short, Dr. Thai was placed in a position of essentially making the best educated guess he could from examining Ms. Newman almost two years after the accident with only the history she relayed.

[¶ 31] The hearing examiner found Dr. Thai based his opinion on inferences from the information provided to him by Ms. Newman and even he determined Ms. Newman's double vision was not caused by the trauma of her injury. The examiner further found Dr. Graber's and Dr. Thai's opinions were based on information provided by Ms. Newman as to how the injury occurred and, because Ms. Newman's testimony lacked credibility, those opinions were of little value.

In our examination and review of a hearing examiner's determination, we defer to the hearing examiner's findings of fact. We will examine conflicting and contradictory evidence to see if the hearing examiner reasonably could have made its findings based on all the evidence before it. The findings of fact may include determinations of witness credibility, as the hearing examiner is charged with determining the credibility of the witnesses. In our review, we will not overturn the hearing examiner's determinations regarding witness credibility unless they are clearly contrary to the overwhelming weight of the evidence. *Hurley v. PDQ Transport, Inc.*[,] 6 P.3d 134, 137 (Wyo.2000).

*Hall*, 2001 WY 136, ¶ 11, 37 P.3d 373.

[¶ 32] Ms. Newman claims there is no evidentiary support for the hearing examiner's conclusion that her testimony lacked credibility. The order reflected the following findings of fact: (1) Ms. Newman testified she suffered a strain to her back and neck on March 13, 1998, as a result of a fall while carrying a tray of heavy dishes; (2) she sought chiropractic treatment from Dr. Graber and was diagnosed with low back pain, lumbosacral sprain/strain, lumbosacral subluxation, sacral/coccyx subluxation, multiple cervical subluxations, cervical neck pain, and cervicobrachial syndrome; (3) Ms. Newman completed a report of injury on March 18, 1998, stating she suffered a strain to the mid back and to her lower back while she was carrying trays of empty dishes; (4) when she completed Dr. Graber's intake form, she noted she had pain in her lower back, neck pain, and occasional headaches; and (5) on a worker's compensation questionnaire completed at Dr. Graber's office, Ms. Newman indicated she sprained her back while carrying tray after tray of dishes, she never had headaches, and she presently had low back problems, pain between the shoulders, and neck problems. Summarizing these findings, the hearing examiner concluded:

13. The evidence indicate[s] that Newman has told medical providers that she suffered a strain or sprain to her mid and lower back and neck as a result of a fall while carrying a tray of dishes on March 13, 1998. Newman filed a report of injury and did not indicate that she fell while carrying a tray of dishes. Nor did Newman indicate on forms she filled out in Dr. Graber's office that she had been injured by a fall while carrying dishes. The evidence shows that Newman has made oral reports of a fall with a tray of dishes[;] however, there are no written reports of a fall while carrying dishes.... This Office finds that Newman's testimony lacks credibility.

[¶ 33] We have reviewed the entire record and are satisfied that the hearing examiner fairly and accurately represented the nature of the evidence. Had Ms. Newman actually "collapsed" to the floor as she testified, she would have included this information in at least one of the several written questionnaires/reports she completed at the time of her injury. As the district court aptly observed, Ms. Newman seeks a retrial on appeal of the witnesses' credibility and the sufficiency of her evidence to support her claim. This, of course, is inappropriate. Our functions are only to ascertain whether there is substantial evidence to support the agency's findings of fact and to assure they are

not clearly contrary to the overwhelming weight of the evidence. The findings of fact which logically lead to the ultimate finding that Ms. Newman failed to prove her headaches and double vision developed from the injury she sustained March 13, 1998, are supported by substantial evidence and are not contrary to the overwhelming weight of the evidence.

### *Application of § 27–14–603(a)*

[¶ 34] Ms. Newman also contends that the hearing examiner erred in applying § 27–14–603(a), which pertains to the burden of proof applied to an injury occurring over a substantial time period. Because we affirm the hearing examiner's determination that Ms. Newman failed to prove an injury as defined by the act, it is unnecessary for us to consider this issue.

### CONCLUSION

[¶ 35] We hold, in WAPA appeals of contested case decisions, the substantial evidence rule shall be applied to review factual findings when both parties have submitted evidence. Without exception, the substantial evidence test requires review of the "whole" record or those parts as designated by the parties. If the party with the burden of proof is the only party to submit evidence and does not prevail, the arbitrary or capricious standard shall be applied to review the rational basis for the agency decision. In this instance, upon review of the entire record, we conclude substantial evidence supported the OAH's Order Denying Benefits.

[¶ 36] Affirmed.