19 P.3d 508 (2001)
2001 WY 21
In the Matter of the Worker's Compensation Claim of David RICE, Appellant (Petitioner/ Employee-Claimant),
v.
STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).
No. 00-133.
Supreme Court of Wyoming.
February 28, 2001.
*509 Representing Appellant: Donald L. Painter, Casper, WY.
Representing Appellee: Gay Woodhouse, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Gerald L. Laska, Senior Assistant Attorney General; David L. Delicath, Assistant Attorney General. Argument by Mr. Delicath.
Before LEHMAN, C.J., and THOMAS,[*] GOLDEN, KITE, JJ., and SPANGLER, D.J. (Ret.).
GOLDEN, Justice.
[¶ 1] Appellant David Rice was denied worker's compensation benefits for a claim of injury resulting from chemical exposure, and he appeals. Following a hearing, the hearing examiner found that Rice neither timely filed an injury report nor proved by a preponderance of the evidence all elements of his claim. We hold that the finding that his injury report was not timely filed is clearly contrary to the weight of the evidence, but uphold the conclusion that Rice did not prove his injury by a preponderance of the evidence and affirm the order denying benefits.

*510 ISSUES
[¶ 2] Rice contends that the issues presented by this appeal are:
1. Whether Appellant's injury was not timely verbally reported.
2. Whether Appellant failed to timely file a written report of his injury.
3. Whether there is substantial evidence to support denial of Appellant's claim and especially the finding that Appellant's testimony in support thereof was not credible.
The Division restates the issues as:
I. Did the Hearing Examiner correctly find that Appellant failed to timely report his alleged injury?
II. Did the Hearing Examiner correctly find that Appellant failed to prove that his employer was not prejudiced by the untimely filing?
III. Did the Hearing Examiner correctly find that Appellant failed to establish every element of his claim by a preponderance of the evidence?

FACTS
[¶ 3] Rice claimed that during ten-hour shifts, he used a chemical paint stripper called Bix Spray-On Stripper to remove paint from a large oil rig. The parties disputed the date that Rice used the stripper. He claimed that he used it on July 19 and 20, 1998, and his employer claimed that he used it for only one day on August 3, 1998. Rice's employer did not provide protective clothing or gloves, and Rice removed protective eyewear after it became coated with the stripper. No other eyewear was provided. The stripper was in contact with Rice's skin, eyes, and mouth. He inhaled the stripper and unknowingly ingested it after drinking from a nearby cup of soda. Rice began experiencing pain in his shoulder at work, appeared at a hospital emergency room, and received medical treatment for it on July 22, 1998. He timely reported the incident to his employer, Key Rocky Mountain, and the Division, claiming that he did not know how he had hurt his shoulder. The shoulder pain was diagnosed as a possible torn rotator cuff and treated with pain medication, a sling, and rest. The pain eased after a few days, and Rice returned to work.
[¶ 4] Two weeks later, Rice experienced wrist pain and was again seen in the emergency room for debilitating pain. X-rays did not reveal any injury, and the pain was attributed to arthritis. Rice did not file a claim. Pain medication was prescribed, and the symptoms ceased after a few days. Several weeks later, which would be October of 1998, Rice experienced pain in his other wrist and began to suspect that the different episodes in different body parts might be related to chemical exposure. In total, Rice testified that he suffered a series of seventeen episodes of migratory pain; however, according to his testimony, as early as five weeks after the first incident of shoulder pain, he began to suspect the pain was caused by the chemical exposure. On his own, he obtained the material safety data sheet (MSDS) on Bix Spray-On Stripper to investigate the effects of acute and chronic exposure to it. He wrote letters to two different doctors, including his family doctor, Dr. Grinstead, providing the MSDS information and asking if there was a relationship between his exposure and pain, and both doctors said no.
[¶ 5] Rice saw Dr. Grinstead on February 23, and March 8, 1999, for severe pain, and on both occasions Rice indicated that he believed the pain was related to toxin exposure six months earlier. Because all laboratory results were negative, the doctor did not believe there was a relationship. Rice filed an injury report claiming chemical exposure was causing pain in both shoulders and wrist. The Division marked that report as received on March 12, 1999. By request of the Division, Rice was seen by Dr. MacGuire, a rheumatology specialist, on March 16, 1999. She was also provided with the MSDS. Dr. MacGuire reported that it was her impression that Rice's symptoms were inconsistent with those caused by chemical exposure. X-rays of his cervical spine, right wrist and left shoulder revealed degenerative changes. She informed the Division she had concluded that it was "extremely clear" that his symptoms were due entirely to the natural effects of aging and degenerative arthritis.
*511 [¶ 6] Rice's employment with Key Rocky Mountain had been terminated in January of 1999 for reasons unrelated to his health. He testified that pain kept him from working after that, and in July of 1999, Rice saw Dr. Rebecca Painter, an internal medicine specialist. She reviewed blood tests for indications of arthritis and found them to be inconclusive. She determined the normal blood tests and the fact that Rice has improved over time indicated that arthritis was not the cause of his migratory pain. Based on the history he provided, she suspected that the pain was secondary to the chemical exposure, and it would eventually correct itself over a three to five year period because of the body's natural antioxidant mechanisms. Rice underwent a series of chelation treatments and immediately began to improve. Dr. Painter concluded that the improvement indicated that she was treating the cause of his joint pain, and his condition was caused by his exposure to Bix Spray On Stripper.
[¶ 7] Rice's symptoms completely resolved, and he returned to work for a different company on August 7, 1999. The Division denied Rice's March claim for benefits, stating that his medical condition was excluded under the statutory definition of an injury when due to the natural aging process. A hearing was scheduled, and in its disclosure statement the Division raised issues that Rice did not suffer a toxic chemical exposure and failed to timely file an injury claim in accordance with Wyo. Stat.Ann. § 27-14-502(a). At the hearing, the Division presented evidence indicating that Rice had worked with the stripper on August 3, 1998, for one day, disputing his claim that his July 19 and 20, 1998, exposure caused him to require medical treatment at the emergency room on July 22, 1998.
[¶ 8] The hearing examiner denied benefits for reasons that are not entirely clear but apparently ruled against Rice on the preliminary issues of not timely filing an injury report and not having proved that he was injured by a work-related chemical exposure. Several findings of fact emphasized that Rice did not report to his doctors, supervisor, or employer any alleged chemical or toxin exposure until seven months after it occurred; found that Rice's supervisor had testified that Rice had used Bix only on August 3, and Rice's employer had not monitored medical treatment because it did not learn of the exposure until March; and found that Rice's testimony about events and dates of the exposure were not credible. Based on these findings, the hearing examiner concluded that Rice had not timely filed his injury report within seventy-two hours to the employer and within ten days to the Division after his doctor's visit on February 23, 1998, and ruled that the employer's ability to monitor medical care was prejudiced because Rice was treated before the doctor notified the employer. The hearing examiner's order stated that Rice had failed to meet his burden of proving by a preponderance of the evidence each essential element of his claim. Upon Rice's petition for review, the district court certified this case to this Court pursuant to W.R.A.P. 12.09(b).

DISCUSSION

Standard of Review
[¶ 9] When the district court certifies directly to this Court an administrative agency's decision, we review that agency decision "under the same appellate standards applicable to the reviewing court of the first instance." In re Bessemer Mt., 856 P.2d 450, 453 (Wyo.1993). Our judicial review is limited to those considerations specified in Wyo. Stat.Ann. § 16-3-114 (LEXIS 1999), which provides in pertinent part:
[T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
* * *
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

*512 * * *
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
[¶ 10] When reviewing a hearing examiner's decision that a worker's compensation claimant has failed to meet the burden of proof, we apply the following principles:
A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. Martinez v. State ex rel. Wyoming Workers' Compensation Div. 917 P.2d 619, 621 (Wyo.1996). When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" language of Wyo.Stat. § 16-3-114(c)(ii) (1990). City of Casper v. Utech, 895 P.2d 449, 452 (Wyo.1995). On appeal the complainant ... has the burden of proving arbitrary administrative action. Knight v. Environmental Quality Council of State of Wyo., 805 P.2d 268 (Wyo.1991); Wyoming Bancorporation v. Bonham, 527 P.2d 432, 439 (Wyo.1974); Marathon Oil Co. v. Welch, 379 P.2d 832, 836 (Wyo.1963); Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P.2d 520, 526 (1957). The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. Utech, 895 P.2d at 451, and cases there cited. The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. Wyoming Steel & Fab, Inc. v. Robles, 882 P.2d 873, 875 (Wyo.1994).
Pederson v. State ex rel. Workers' Compensation Div., 939 P.2d 740, 742 (Wyo.1997); see also Nissen v. Cheyenne Frontier Days, Inc., 983 P.2d 722, 724-25 (Wyo.1999); Carrillo v. State ex rel. Workers' Safety and Compensation Div., 987 P.2d 690, 692-93 (Wyo.1999).
[¶ 11] In reviewing findings of fact we examine the entire record to determine if there is substantial evidence to support an agency's findings. Weidner v. Life Care Centers of America, 893 P.2d 706, 710 (Wyo.1995). If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Id. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence. Id.

Timeliness Finding
[¶ 12] Rice contends that his March, 1999, injury report preceded July 5, 1999, the date of Dr. Painter's correct diagnosis, and cannot be found untimely. Alternatively, he contends that if the date of injury is determined to be February 23, 1999, he proved that the employer did not suffer any prejudice by a late filing.
[¶ 13] Our law on determining the date of a compensable injury is well-established. Wesaw v. State of Wyo. ex. rel. Wyo. Workers' Compensation Div., 2001 WY 17, ¶ 10, 19 P.3d 500 (Wyo.2001). The notice and claim requirements of the workers' compensation statutes do not begin to run until the employee becomes aware that an accident has caused an injury; and the term "injury" as used in the compensation statutes means compensable injury. Baldwin v. Scullion, 50 Wyo. 508, 530-31, 62 P.2d 531, 539 (Wyo. 1936). Under previous versions of the filing statutes and statute of limitations, we have consistently applied the concept of a "compensable injury" to determine timeliness of notice and claims. Big Horn Coal Co. v. Wartensleben, 502 P.2d 187, 188 (Wyo.1972) (interpreting the previous version of Wyo. Stat.Ann. § 27-14-502); Aanenson v. State ex rel. Wyo. Workers' Compensation Div., 842 P.2d 1077, 1082-83 (Wyo.1992) (applying "compensable injury" concept to statute of limitations, Wyo.Stat.Ann. § 27-12-503). The burden to show the actual time of the compensable injury, its cause, and its relation to his employment at the time of injury is *513 placed on the employee. Bemis v. Texaco, Inc., 401 P.2d 708, 709 (Wyo.1965).
[¶ 14] "[W]hen determining the time a particular injury became compensable, it should be asked: When would a reasonable person, under the circumstances, have understood the full extent and nature of the injury and that the injury was related to his or her employment?" Aanenson, 842 P.2d at 1082. This question necessarily requires a careful evaluation of all facts to determine when an employee reasonably understood the nature and seriousness of his condition and that it was work-related. Our previous decisions have never burdened an employee with filing claims for incidents or trivial injuries to avoid timeliness issues. Big Horn Coal Co., 502 P.2d at 188 (citing Potter v. Midland Cooperatives, Inc., 248 Minn. 380, 80 N.W.2d 59, 61 (1956)). However, the employee may not ignore these requirements for compensable injuries because notice requirements and the statute of limitations exist to allow employers to investigate claims, monitor medical care, and avoid stale claims. Sherwin-Williams Co. v. Borchert, 994 P.2d 959, 964 (Wyo. 2000). The finder of fact is charged with determining the time and cause of a compensable injury; however, whether an employee's claim is to be barred for failure to timely file notice or a claim is a mixed question of fact and law. Aanenson, 842 P.2d at 1080.
[¶ 15] In this case, Rice's actions indicate that if his self-diagnosis was correct, he understood the nature and seriousness of his injury and that it was work-related as early as October 1998. He wrote two doctors inquiring about a relationship, was seen by two doctors to inquire about a relationship, and no diagnosis established that he was correct. Although Rice did not receive a diagnosis that his injury was caused by a work-related chemical exposure, he diligently pursued medical treatment, again pointing out to two different doctors that the pain might be caused by the chemical exposure and again receiving an arthritis diagnosis. Despite an arthritis diagnosis, Rice filed an injury report with the Division in March of 1999, well before he received in July of 1999 Dr. Painter's diagnosis confirming his suspicions. Based on these facts, we conclude that the hearing examiner's finding that Rice did not timely file an injury report with the employer or the Division is clearly contrary to the weight of the evidence. We affirm the decision, however, on grounds that Rice did not establish by a preponderance of the evidence that he suffered an injury.

Proof of Injury
[¶ 16] At first glance, it would appear that the hearing examiner found the untimely report dispositive of the case; however, the hearing examiner's finding of fact about Rice's credibility is the apparent basis for the legal conclusion that Rice did not carry his burden of proving all elements of his claim. One finding, stating that Rice's testimony about the events and dates associated with the chemical exposure was not credible, was preceded by a finding that the employer's testimony established that Rice worked with the stripper on August 3, 1998, and for one day only. Consequently, Rice did not prove that he had suffered chemical exposure on July 19 and 20, that led to his first appearance at an emergency room on July 22, 1998. Rice's medical testimony establishing causation was based solely on the history he provided to Dr. Painter. If the hearing examiner did not believe that chemical exposure occurred immediately preceding Rice's initial shoulder pain, then Rice failed to establish the essential elements of his claim that he had suffered a work-related chemical exposure that caused his injuries requiring chelation therapy.
[¶ 17] The hearing examiner's findings of fact, however, did not ultimately conclude that Rice had failed to prove an injury or causation. Ordinarily, having determined that the hearing examiner erred on the timely filing issue, we would remand for further findings to support the denial of benefits. Mekss v. Wyo. Girls School, 813 P.2d 185, 202 (Wyo.1991), cert. denied, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992). Because of the credibility determination, however, we will not do so in this case because the evidence supports the finding that he did not prove an injury or causation and is not clearly contrary to the great weight of the evidence, because the Division provided medical *514 evidence that Rice's pain was caused by arthritis. Credibility determinations are the unique province of the hearing examiner, and we eschew re-weighing those conclusions. Carrillo, 987 P.2d at 693. Because Rice failed to prove by a preponderance of the evidence that he suffered a work-related chemical exposure that caused his injuries, the hearing examiner's decision is affirmed.
[¶ 18] We would remind all hearing examiners that when they conduct contested case hearings that take evidence on all issues, judicial economy is served and appellate review facilitated when the hearing examiner makes proper findings of fact and conclusions of law on all issues properly before it.
[¶ 19] We affirm the order denying benefits.
NOTES
[*] concurred prior to retirement