2005 WY 7

In the Matter of the Worker's Compensation Claim of Lillian TORRES, Appellant (Petitioner/Employee–Claimant),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).

No. 04–43.

Supreme Court of Wyoming.

Jan. 27, 2005.

Representing Appellant: Bernard Q. Phelan, Phelan–Watson Law Office, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; and Kristi M. Radosevich, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and KAUTZ, D.J.

HILL, Chief Justice.

[¶ 1] Appellant, Lillian Torres (Torres), sought worker's compensation benefits claiming that she suffered a hernia while lifting heavy wet laundry at her workplace, Sage Holiday Inn, LLC, in Cheyenne. Benefits were denied by the Wyoming Workers' Safety and Compensation Division (Division) on the basis that Torres failed to timely report the injury and because she failed to meet the very specific burden of proof that pertains to hernia injuries. Torres objected to the Division's decision to deny benefits and requested a contested case hearing before the Office of Administrative Hearings. The presiding hearing examiner determined that Torres' claim was not timely filed and that she otherwise had not met her burden of proof. Torres then filed a petition for review in the district court and the district court affirmed, embracing the hearing examiner's findings of fact and conclusions of law. We also affirm.

## ISSUES

[¶ 2] Torres raises these issues:

1. Is the hearing officer's finding that there was insufficient evidence showing "injury" under Wyo. Stat. § 27–14–603(c) supported by substantial evidence?

2. May a hearing officer find that a claimant has failed to overcome the statutory presumption of prejudice due to "late filing" without notice of the specific nature of the claims and a prehearing determination, or is such a conclusion contrary to law?

The State enlarges on those issues:

I. A claimant seeking workers' compensation benefits for a hernia must meet the heightened burden of proof pursuant to Wyo. Stat. § 27–14–603(c), by clearly proving the hernia is work-related. Substantial evidence supports the hearing examiner's decision Ms. Torres failed to prove her hernia is work-related.

II. Wyo. Stat. § 27–14–502(c) provides a presumption that a claim will be denied if an employee's notice of injury is untimely filed. A claimant may overcome the presumption if a lack of prejudice to the employer and Division is proven by clear and

convincing evidence. Ms. Torres claims she made no effort to show the absence of prejudice because she did not receive notice of the timeliness issue, although, the Workers' Compensation Division's Disclosure Statement included the timeliness issue, and the Division included this issue in the Initial Review issued nine months prior to the contested case hearing. The hearing examiner's determination Ms. Torres failed to overcome the presumption of prejudice due to untimely filing is in accordance with law.

## FACTS

[¶ 3]   On April 25, 2002, Torres submitted a report of injury form to the Division claiming that she suffered a work-related injury on February 20, 2002. Torres worked in the laundry/housekeeping department at the Cheyenne Holiday Inn. The injury suffered was an incisional hernia[1] and its cause, according to Torres, was pulling and tugging at heavy laundry items in order to remove them from washing machines. Management at the Holiday Inn did not believe the injury was work-related.

[¶ 4]   In a letter dated May 10, 2002, Laurie Tucker, Human Resources Director of the Holiday Inn, related this information to the Division:

The Holiday Inn–Cheyenne is disputing the Workers' Compensation Claim filed by Lillian Torres as we feel this is not a work-related injury:

· Ms. Torres never at any time told her supervisors or the HR Director that she had been injured on the job.

· On 2/18 Ms. Torres left for lunch, called at the end of her break and told her supervisor she was not coming back as she had a doctor's appointment.

· 2/19 Ms. Torres left for lunch, called at the end of her break and told her supervisor she had a doctor's appointment and was not coming back to work that day.

· 2/20 Ms. Torres left for lunch, called at the end of her break and told her supervisor she was not coming back because she didn't feel well.

· 2/21 Ms. Torres called in sick. She did not speak to her supervisor as required by company policy; instead she left a message with an associate that she had to have an operation and would not be back for awhile.

· 2/21/02 an unidentified female entered the HR office and tossed a doctor's note on the desk. The note simply stating Ms. Torres could not work until further notice and no further information was provided to us.

· Ms. Torres never filed a report of injury at the time she claims she was injured.

· Ms. Torres did not notify this office until 4/25/02, which was 2 months after she went on leave to have surgery.

· Ms. Torres has received training on the proper procedures in reporting a work-related injury.

· Ms. Torres signed a Workers' Compensation Policy which outlines the company policies on work-related injuries.

· Workers' Compensation informational posters are posted throughout the hotel where all associates can read it. These posters are located next to the time clock and in the break rooms.

[¶ 5]   On April 29, 2002, the Division sent Torres a Notice of Lack of Information that contained these directions:

---

1.   4 Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialties, § 30.161, Richard M. Patterson, J.D., Editor (4th ed.1998), describes such a hernia:

§ 30.161   Ventral or incisional herniae.
These herniae occur through the weak point constituted by part or all of a healed abdominal incision. Any one or more of a number of factors may contribute to their development. General factors such as malnutrition, and therefore poor healing during the post operative phase, or persistent straining such as oc-

curs with a chronic cough are not uncommon. Local conditions include inadequate suturing of the wound, faulty suture material, and wound infection. Of the three, the last is most common.
The development of an incisional hernia does not, *per se*, indicate negligence on the part of the surgeon in closing the wound. Whatever the cause, the resultant hernia assumes similar characteristics to the adult umbilical hernia, except that it occurs through an incision and the neck of the sac may be very large.

This is not a denial of benefits. The Workers' Compensation Division has received and reviewed your employer's report of your 'report of injury' and needs the following information to make a determination:

· The Division needs additional information to help determine the compensability of your claim. *The Division is requesting all medical treatment records based on your report of "abdominal pain" to the claims analyst per phone conversation on 4/23/02 @ 9:30 a.m. Please contact your health care provider about submitting all medical records related to your Abdomen prior to and subsequent of the injury on 2/20/2002.* Wyoming Statute 27–14–102(a)(xi).

· *The Division is unable to process claims until the enclosed copy of your injury report is reviewed, signed by you and returned to the Division.* Your signature is a release of information for medical records. *(Wyoming Statute 27–14–502)*

· *If an employee suffers a hernia, he/she is entitled to compensation if he/she clearly proves that:*

(i) *The hernia is of recent origin.*

(ii) *Its appearance was accompanied by pain.*

(iii) *It was immediately preceded by some accidental strain suffered in the course of the employment.*

(iv) *It did not exist prior to the date of the alleged injury.*

If an employee established his/her right to compensation for a hernia as provided and elects not to be operated on, he/she will not be compensated for the results of future strangulation of the hernia. (Wyoming Statute 27–14–603(c)(d))

· *Your injury was not reported to the employer within the 72–hour time limit required by Wyoming Statute 27–14–502(a).*

· Your injury report was not filed with the Division within the 10–day time limit required by Wyoming Statute 27–14–502(a). *Please send in a written response as to why you did not file within the 10–day limit. Failure of the injured worker to file the injury report with the Division within 10 days is a presumption that the claim shall be denied.* Wyoming Statute 27–14–502(c)

· Definition of injury does not include: *Any injury or condition preexisting at the time of employment with the employer against whom a claim is made.* (Wyoming Statute 27–14–102(a)(xi)(F))

· *The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to prove by competent medical authority that his/her claim arose out of and in the course of his/her employment and to prove by a preponderance of the evidence that:*

a. *There is a direct causal connection between the condition or circumstances under which the work is performed and the injury.*

b. *The injury can be seen to have followed as a natural incident of the work as a result of the employment.*

c. *The injury can fairly be traced to the employment as the proximate cause.*

d. *The injury does not come from a hazard to which employees would have been equally exposed outside of employment.*

e. *The injury is incidental to the character of the business and not independent of the relation of employer and employee.* (Wyoming Statute 27–14–603(a)) [Emphasis in original.]

[¶ 6] On May 24, 2002, the Division communicated its Final Determination to Torres:

The Workers' Compensation Division has reviewed your case file and has determined that we cannot approve payment of benefits:

· The statutory requirements of work-related hernia include proving the following: (i) The hernia is of recent origin; (ii) Its appearance was accompanied by pain; (iii) It was immediately preceded by some accidental strain suffered in the course of the employment; (iv) It did not exist prior to the date of the alleged injury. *This injury does not meet the guidelines, as sub-*

*stantiated by objective medical evidence.* (Wyoming Statute 27–14 –603(c)(d))

· The incident, as reported to the Division, does not meet the following definition: "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by, the employer and incurred while at work in places where employer's business requires an employee's presence and *which subjects the employee to extrahazardous duties incident to the business.* (Wyoming Statute 27–14–102(a)(xi))

· Definition of injury does not include: *Any injury or condition preexisting at the time of employment with the employer against whom a claim is made.* (Wyoming Statute 27–14–102(a)(xi)(F))

· *Your injury was not reported to the employer within the 72–hour time limit required by Wyoming Statute 27–14–502(a).*

· *The employer has indicated their objection on the injury report.* (Wyoming Statute 27–14–506(a)(ii))

· *The burden is on the claimant to prove each essential element of his or her claim by a preponderance of the evidence.* [Emphasis in original.]

[¶ 7] Torres requested a hearing to challenge that determination. Prior to the hearing, the Division gave notice to Torres that the first burden of proof that fell to her was "for a late reported injury requiring the Employee–Claimant to prove a lack of prejudice to both the Division and the Employer by clear and convincing evidence under W.S. § 27–14–502." The hearing was held on February 18, 2003. In order to meaningfully articulate the facts presented at the hearing, they must be organized along the lines of the statute that mandates the burden of proof applicable in a case where the injury suffered is a hernia. Wyo. Stat. Ann. § 27–14–603(c) (LexisNexis 2003) provides:

(c) If an employee suffers a hernia, he is entitled to compensation if he clearly proves that:

(i) The hernia is of recent origin;

(ii) Its appearance was accompanied by pain;

(iii) It was immediately preceded by some accidental strain suffered in the course of the employment; and

(iv) It did not exist prior to the date of the alleged injury.

[¶ 8] Torres, a fifty-five year old, testified that she had worked for the Holiday Inn for about five years at the time of her injury. She claimed that she suffered an incisional hernia sometime after her abdominal surgery in December of 2001, but before February 20, 2002. She did not know exactly what was wrong with her until about that date, when an actual diagnosis was made. On that date, she was told she had a hernia and that she should go to Take Pullos, M.D., in order to have it surgically repaired. Dr. Pullos' notes indicate that he conveyed additional information to Torres on February 21, 2002, indicating that she had suffered an incisional hernia. Dr. Pullos performed surgery to repair Torres' hernia on March 5, 2002.

[¶ 9] Torres testified that she had surgery to remove an ovarian cyst in late 2001. Several weeks after the surgery, her attending physician deemed her fit to return to work. She did return to work, but reported to her supervisor that she could not unload washing machines that had been packed full of bed linens and towels. The problem was the strain of removing the very wet, very heavy, and very tangled linens from the washers. Her supervisor told her that was her job and that she had to do it. When she performed those tasks, she felt a pain in her abdomen at the site of her surgical incision. While her testimony was quite disorganized, especially with respect to time, a fair reading of it was that she experienced pain while working from the time she returned to work in late 2001 or early 2002, until the incident that prompted her to seek medical attention on February 20, 2002. On or about that date, she discerned that something was seriously wrong (i.e., her intestine was protruding through the abdominal wall) and she sought medical attention. Torres also claimed that the Human Resources Director

at the Holiday Inn refused to give her the worker's compensation forms necessary to report her injury because she did not believe that Torres needed to see a doctor. Torres asserted that she was threatened with loss of her job as well, "if you are going to keep this up." Cross examination of Torres revealed that she did no activities outside of work that would have produced the hernia.

[¶ 10] The Order Denying Benefits included these findings of fact:

1. The issue in this case is whether Torres' incisional hernia that was surgically repaired on March 5, 2002 is a compensable, work-related injury. At hearing, Torres was a very poor historian making it difficult for this Hearing Examiner to determine, with accuracy, when important events occurred.

2. Torres has been employed as a housekeeper in the laundry department at the Holiday Inn for approximately five years. On April 25, 2002 Torres filed a Wyoming Report of Injury with the Division alleging that she sustained an incisional hernia on February 20, 2002. Exhibit S–A. The Division denied coverage contending that Torres did not report her injury to her employer within 72 hours of its occurrence, that her hernia was preexisting and that her employer had objected to the claim. Exhibit S–F.

3. Torres sought medical attention for her hernia on February 21, 2002, with Dr. Take Pullos, M.D. Dr. Pullos diagnosed Torres with an incisional hernia. Torres had surgery on her ovaries in December 2001 and the hernia occurred at the incisional site of the prior abdominal surgery. Exhibit S–B, p. 3. Dr. Pullos repaired the hernia on March 5, 2002. Exhibit S–B, p. 5.

4. Dr. Pullos testified by deposition that he was unable to determine whether or not Torres' hernia was present before February 20, 2002. Exhibit 1, p. 12, lines 20 through 25. Dr. Pullos did not recall being informed by Torres of some accidental strain that preceded her hernia and admitted that an incisional hernia could occur without any identifiable incident and that he did not know the cause of Torres'

hernia. Exhibit 1, p. 13, line 5 through page 14, line 13. Dr. Pullos testified that Torres may have aggravated her hernia by her work activities but also admitted that the hernia could have been due to some inadequacy of the healing process at her incisional site. Exhibit 1, p. 15, lines 10 through 18 and p. 17, line 17 through p. 18, line 3.

5. Dr. Pullos' testimony was equivocal and did not prove, by clear and convincing evidence, that Torres sustained an incisional hernia during the course and scope of her employment at the Holiday Inn on February 20, 2002.

6. Additionally, the evidence supported that Torres failed to timely report her injury to her employer and failed to timely file for benefits. Torres testified she sustained her hernia sometime in January 2002 while working in the laundry department pulling tangled sheets and pillowcases from a washer. Torres testified the injury occurred because her supervisor, Travis Durand (Durand), stuffed too many sheets into the washer. Torres testified she immediately reported her injury to Durand and Durand refused to allow her to go home after she reported her injury to him. Torres also testified she spoke with Brenda Cooper (Cooper), her assistant supervisor in February 2002 and Cooper refused to fill out workers' compensation paperwork. Cooper told Torres that she didn't need to seek medical attention, but instead needed to come to work.

7. Both Cooper and Durand denied any knowledge of Torres' reported injury and wrote letters to the Division, which are in Torres' file, after learning that Torres had filed a report of injury in April 2002 and claimed to have reported the injury to them. Cooper wrote a letter denying any knowledge of a work-related incident until after Torres filed for workers' compensation benefits in April 2002. Exhibit S–D. Durand, who had been employed at the Holiday Inn for 15 years, wrote a letter stating that at no time during his employment with Holiday Inn did Torres ever report an accident or injury to him. Exhibit S–E. Durand also testified at the

contested case hearing that he left employment at the Holiday Inn in December 2001, prior to Torres' claim that she injured herself in January 2002 because of Durand's actions. Durand's credible testimony, corroborated by his letter to Torres' file, clearly showed that Torres did not and could not have reported an injury to him as she claimed at hearing.

8. Torres filed her report of injury on April 25, 2002 claiming she sustained her hernia on February 20, 2002. Torres testified that she filed in April 2002 because that was the date Dr. Pullos told her she had suffered a hernia. However, Dr. Pullos' medical records clearly reflect that he diagnosed Torres with a hernia on February 21, 2002 and surgically repaired it on March 5, 2002.

9. Torres is not relieved of her statutory obligation to timely report and timely file for benefits. Torres' reporting and filing for benefits in this case was clearly untimely. Because of the two-month delay in reporting the hernia injury and filing for benefits, both Holiday Inn and the Division were prejudiced in investigating the accident and monitoring medical treatment. By the time Holiday Inn and the Division learned of the accident and hernia injury, at least three months had passed since the alleged accident and Torres had already received surgical intervention. No evidence was submitted by Torres to rebut the presumption of denial of benefits in this case.

[¶ 11] The district court affirmed the hearing examiner's denial of benefits, and essentially adopted the findings of fact and conclusions of law contained in the Order Denying Benefits.

## STANDARD OF REVIEW

[¶ 12] Our standard of review for reviewing administrative agency action was clarified and refined in the case of *Newman v. State ex rel. Workers' Safety and Compensation Division*, 2002 WY 91, ¶¶ 7–25, 49 P.3d 163, ¶¶ 7–25 (Wyo.2002). That case held that "the substantial evidence test is the appropriate standard of review ... when factual findings are involved and both parties

submit evidence." *Newman*, ¶ 22. In appeals where both parties submitted evidence at the hearing below and the dispute is over the soundness of the factual findings of the agency, *Newman* mandates the appellate review be limited to application of the substantial evidence test. This is true regardless of which party appeals from the agency decision. The substantial evidence test provides: "In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Newman*, ¶ 12 (quoting *State ex rel. Wyoming Workers' Safety and Compensation Division v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)). Moreover,

When factual findings are challenged, we will affirm those findings if they are supported by substantial evidence.

In contested cases conducted before administrative agencies, the deference that normally is accorded the findings of fact by a trial court is extended to the administrative agency, and we do not adjust the decision of the agency unless it is clearly contrary to the overwhelming weight of the evidence on record. *Mekss [v. Wyoming Girls' School, State of Wyoming*, 813 P.2d 185 (Wyo.1991)]; *State ex rel. Wyoming Workers' Compensation Div. v. Brown*, 805 P.2d 830 (Wyo.1991). This is so because, in such an instance, the administrative body is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses. *Gilmore v. Oil and Gas Conservation Comm'n*, 642 P.2d 773 (Wyo.1982). *Wyoming Steel & Fab, Inc.*, 882 P.2d at 875.

*State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division v. Armijo*, 2004 WY 116, ¶ 7, 99 P.3d 445, ¶ 7 (Wyo. 2004).

[¶ 13] The interpretation and correct application of the provisions of the Wyo-

ming Worker's Compensation Act is a question of law over which our review authority is plenary. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. This Court does not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *Wesaw v. Quality Maintenance*, 2001 WY 17, ¶ 8, 19 P.3d 500, ¶ 8 (Wyo.2001).

[¶ 14] The time lines for filing a report of injury are of particular importance in this case. Wyo. Stat. Ann. § 27–14–502 (LexisNexis 2003) provides, in pertinent part:

(a) As soon as is practical but not later than seventy-two (72) hours after the general nature of the injury became apparent, an injured employee shall, in writing or by other means approved by the department, report the occurrence and general nature of the accident or injury to the employer. In addition, the injured employee shall within ten (10) days after the injury became apparent, file an injury report with the employer and the division in a manner and containing information prescribed by division rule and regulation. If the injured employee is physically unable to comply, a personal representative of the employee, his dependents or a personal representative of the dependents in case of death shall, following notification by the employer or department of reporting requirements, make and file the report for the injured employee.

(b) If an injured employee, any dependent or personal representative makes a written report of the injury to the employer or his representative, the employer shall acknowledge receipt of the report in writing either upon the report or a copy of the report.

(c) Failure of the injured employee, any dependent or personal representative to report the accident or injury to the employer and to file the injury report in accordance with subsection (a) of this sec-

tion is a presumption that the claim shall be denied. The presumption may be rebutted if the employee establishes by clear and convincing evidence a lack of prejudice to the employer or division in investigating the injury and in monitoring medical treatment.

[¶ 15] Of course, the statutory limitations periods are of pivotal importance in circumstances like this because failure to comply with those limitation periods may be fatal to even a very meritorious claim. The rules and regulations of the Workers' Compensation Division provide some additional direction:

CHAPTER 4—INJURY REPORT PROCEDURE

**Section 1. Worker Report of the Injury.** The report of the injury is not a claim for benefits. W.S. § 27–14–503(a). The injured worker is required by the statute to report the occurrence and general nature of the injury to the employer as soon as practical within 72 hours after the injury becomes apparent, and to file a signed injury report on the required form with the Division within ten days after the injury becomes apparent.[2] Otherwise, there is a statutory presumption that the claim shall be denied. However, this presumption may be rebutted if the worker can establish by clear and convincing evidence that the delay does not prejudice the employer or Division in investigating the injury and in monitoring medical treatment.

**Section 2. Contents of the Worker's Report.** The report shall be on a form provided by the Division, available from the Division or employer, and shall contain the following information:

(a) The worker's full name, mailing address, telephone number and Social Security Number;

(b) The worker's birth date, sex, marital status and number of dependents;

---

**2.** However, it is important for all parties to note our recent construction of Wyo. Stat. Ann. § 27–14–502(c). *See Wesaw v. Quality Maintenance*, 2001 WY 17, ¶ 14, 19 P.3d 500, ¶ 14 (Wyo.2001). ("[T]he statutory presumption [of prejudice to employer and Division] does not arise unless an employee failed to report within 72 hours **and** failed to file an injury report within ten days.") (Emphasis added.)

(c) The employer's full name, address and telephone number;

(d) The worker's date of hire and job site;

(e) A statement of whether the worker is a regular worker, volunteer, inmate, a governmentally subsidized work experience program participant, or has an interest in the business as owner, partner, or corporate officer;

(f) The worker's current monthly earnings;

(g) The date, time and location of the accident or injury;

(h) A statement of how the injury occurred, including what the worker was doing at the time and what objects or substances caused the injury;

(j) A statement identifying the parts of the worker's body affected by the injury;

(k) The name(s) of any witness(es) to the events causing the injury;

(l) The names and addresses of all health care providers who have treated or provided medical services to the worker for the injury being reported;

(m) If the report is prepared by a person other than the worker, the full name, address and telephone number of the person preparing the report, and that person's relationship to the worker;

(n) Such additional information as the Division deems appropriate; and

(o) The report form shall be signed and dated by the worker, or his personal representative if the worker is incapacitated.

**Section 3. Employer Report of the Injury.** The employer must file a report of injury within ten days after the date on which the employer is notified of the injury. Failure by an employer to report may result in a fine or jail. W.S. § 27–14–506(c). The report must be filed with the Division; it shall be on the required form, dated, signed by the employer or employer's authorized representative and shall contain the following information:

(a) The worker's date of hire and job title;

(b) A statement of whether the worker is a regular employee, volunteer, inmate, a governmentally subsidized work experience program participant, or has an interest in the business as owner, partner, or corporate officer;

(c) The worker's current monthly earnings;

(d) The opinion of the employer as to whether the worker suffered a work-related injury that is compensable under the Act; and

(e) If the employer's opinion is that the injury is not compensable under the Act, the employer shall specify its reason for that opinion. Those matters will be addressed by the Division as part of the determination process.

**Section 4. Injury Report Forms.** Injury report forms are available, without charge, from the Division or its district offices. W.S. § 27–14–502(a) and (c). The limitation of time for filing does not apply if the worker is mentally incompetent or a minor and has no guardian. W.S. § 27–14–505. The form shall contain a statement in boldface type that the report is not a claim for benefits.

**Section 5. Notification of Injury.** Any affected party may give notice, by electronic means to the Division, of an occurrence of injury to a worker in covered employment. Upon receipt of notice of injury, the Division will mail the appropriate forms to the injured worker and the employer for completion and signatures:

(a) If notification was electronically submitted within the deadline prescribed in W.S. § 27–14–502(a) and the Division receives the signed report within ten days of its mailing by the Division, the report shall be deemed to have been timely filed. In such a case, the Division's allotted time to respond will begin when it receives the signed report.

(b) If the Division receives the signed report more than ten days after its mailing by the Division, the report shall be deemed filed on the date the signed report is received by the Division.

(c) The Division will not approve any award nor pay any claim prior to its receipt of a signed waiver from the injured

employee, on a form provided by the Division, authorizing the Division to release benefit, employment or medical information to those parties designated recipients in W.S. § 27–14–805(d).

(d) Nothing in this section shall relieve any party of the duty to submit documents bearing original signatures, when required by the Act or these Rules.

3 Weil's Code of Wyoming Rules, Department of Employment, *Workers' Compensation Medical Commission, Rules of Practice and Procedure*, Chapter 4, Sections 1–4, *Injury Report Procedure*, 025 220 001–14, –15 (2004).

[¶ 16] These rules appear to suggest a hospitable environment designed to accommodate the claims of workers who do not always have the means or the skills to meet head-on the consequences of a limitations statute such as that at issue here. The circumstances of this case, however, as well as many others like it, counsel that workers must be hyper-vigilant and super-diligent if they are to protect their constitutional and statutory rights to worker's compensation benefits. Workers must understand that the employer is often an adversary in this process. Worker's compensation benefits are a form of industrial insurance, and workers must be aware that the Division's role in the process is also an adversarial one, just as insurance companies are many times adversaries to their insureds when claims are filed.

[¶ 17] With respect to the date on which a compensable injury occurs, we have held:

An employee is required to timely notify his employer of an injury and file an injury report with the Division. Wyo. Stat. Ann. § 27–14–502(a) (LexisNexis 2003). A failure to timely report the accident or injury as required by statute is a presumption that the claim shall be denied. § 27–14–502(c). The statutory reporting requirements do not begin to run until the employee becomes aware that an accident has caused an injury; and the term "injury" as used in the compensation statutes means compensable injury. *Rice v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2001 WY 21, ¶ 13, 19 P.3d 508, ¶ 13 (Wyo. 2001); *Wesaw v. Quality Maintenance*,

2001 WY 17, ¶ 10, 19 P.3d 500, ¶ 10 (Wyo. 2001); *Baldwin v. Scullion*, 50 Wyo. 508, 530–31, 62 P.2d 531, 539 (Wyo.1936).

Our law on determining the date of a compensable injury is well-established. *Rice*, ¶ 13; *Bemis v. Texaco, Inc.*, 401 P.2d 708, 709 (Wyo.1965). We have consistently held that when a correct diagnosis or prognosis of present or likely future disability is communicated to the claimant, the injury is discovered, it is compensable, and the statute of limitations begins to run. *City of Casper v. Haines*, 886 P.2d 585, 589 (Wyo.1994) (citing *Aanenson v. State ex rel. Worker's Comp. Div.*, 842 P.2d 1077, 1081–83 (Wyo.1992) (discussing this Court's decisions regarding compensable injury)). "[W]hen determining the time a particular injury became compensable, it should be asked: When would a reasonable person, under the circumstances, have understood the full extent and nature of the injury and that the injury was related to his or her employment?" *Aanenson*, 842 P.2d at 1082. This question necessarily requires a careful evaluation of all facts to determine when an employee reasonably understood the nature and seriousness of his condition and that it was work-related.

Our previous decisions have never burdened an employee with filing claims for trivial injuries to avoid timeliness issues. *Big Horn Coal Co. v. Wartensleben*, 502 P.2d 187, 188 (Wyo.1972) (citing *Potter v. Midland Cooperatives, Inc.*, 248 Minn. 380, 80 N.W.2d 59, 61 (1956)). The employee, however, may not ignore these requirements for compensable injuries because notice requirements and the statute of limitations exist to allow employers to investigate claims, monitor medical care, and avoid stale claims. *Sherwin–Williams Co. v. Borchert*, 994 P.2d 959, 964 (Wyo.2000). The finder of fact is charged with determining the time and cause of a compensable injury; however, whether an employee's claim is to be barred for failure to timely file notice or a claim is a mixed question of fact and law. *Aanenson*, 842 P.2d at 1080.

*Worker's Compensation Claim of Iverson v. Frost Construction*, 2003 WY 162, ¶¶ 14–16, 81 P.3d 190, ¶¶ 14–16 (Wyo.2003).

[¶ 18]   In addition, we have held:

Pursuant to Wyo. Stat. Ann. § 27–14–603(c) (Michie 1997), an employee seeking worker's compensation benefits for a hernia bears a heavy burden.  That statute provides:

(c) If an employee suffers a hernia, he is entitled to compensation if he clearly proves that:

(i) The hernia is of recent origin;

(ii) Its appearance was accompanied by pain;

(iii) It was immediately preceded by some accidental strain suffered in the course of the employment; and

(iv) It did not exist prior to the date of the alleged injury.

An employee's burden to "clearly prove" the elements of 27–14–603(c) requires evidence that is clear and convincing.  *In re Hardison*, 429 P.2d 320, 322 (Wyo.1967). Clear and convincing evidence is something more than a preponderance, but less than proof beyond a reasonable doubt.  *Id.* It is the kind of proof that would persuade a trier of fact that the truth of the contention is highly probable.  *Matter of Paternity of TS*, 917 P.2d 183, 185 (Wyo.1996); *Matter of GP*, 679 P.2d 976, 982 (Wyo. 1984).

*Bando v. Clure Brothers Furniture*, 980 P.2d 323, 329 (Wyo.1999).

## DISCUSSION

### Did Torres Report her Injury in a Timely Manner

[¶ 19]   We address this issue first because it is a threshold issue.  If Torres' reports were not timely, and the presumption of prejudice that attaches thereto was not rebutted by Torres, then we need not dispositively address the hearing examiner's findings that Torres failed to offer adequate proof of her hernia injury.

[¶ 20]   Here, the record is quite clear that Torres did not report her injury to her employer within 72 hours of the date on which a correct diagnosis was communicated to her. Likewise, her report of the injury was not submitted to the Division within ten days of that same date.  Because neither report was timely filed, the presumption of prejudice to the Division and the employer arose.  *Wesaw*, ¶ 14.  Torres concedes, and the record bears out the concession, that she made no attempt to overcome the presumption of prejudice to the employer and the Division because she did not deem the issue to have been joined by the Division's papers.  We conclude that the issue of the timeliness of Torres' reports was clearly placed into controversy and that there is substantial evidence to support the hearing examiner's findings of fact in that regard.  We also conclude that the hearing examiner's conclusions of law were in consonance with the governing statute.

### The Merits of Torres' Claim

[¶ 21]   Because we affirm on the basis that Torres' reports were not timely, it is unnecessary for us to dispositively address the merits of Torres' injury claim.  However, it is appropriate for us to comment on the hearing examiner's findings in a very limited way.  The hearing examiner found that Dr. Pullos' testimony was "equivocal."  A fair reading of the record reveals that his testimony was not equivocal, though its certainty may have been clouded by Torres' failure to communicate her medical condition with precise clarity.  Of course, it is apparent that her consultation with Dr. Pullos was not for the purpose of establishing a claim for worker's compensation benefits, but for treatment of her medical condition.  Dr. Pullos' testimony was, in sum, that her work effort "clearly did cause her incisional hernia to be aggravated."  Dr. Pullos also made clear that his opinion in that regard was as certain as medical science could be in a circumstance such as this.  Moreover, there was no testimony to contradict Torres' testimony that her hernia did occur at work, or at least that it was aggravated by her work effort over a period of days or weeks.  *See, e.g., In re Armijo*, ¶ 8.

[¶ 22]   The purpose of the Wyoming Worker's Compensation Act bears repeating here:

## § 27–14–101. Short title; statement of intent.

(a) This act may be cited as the "Wyoming Worker's Compensation Act".

(b) It is the intent of the legislature in creating the Wyoming worker's compensation division that the laws administered by it to provide a worker's benefit system be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the Worker's Compensation Act. It is the specific intent of the legislature that benefit claims cases be decided on their merits and that the common law rule of "liberal construction" based on the supposed "remedial" basis of workers' benefits legislation shall not apply in these cases. The worker's benefit system in Wyoming is based on a mutual renunciation of common law rights and defenses by employers and employees alike. Accordingly, the legislature declares that the Worker's Compensation Act is not remedial in any sense and is not to be given a broad liberal construction in favor of any party.

Wyo. Stat. Ann. § 27–14–101 (LexisNexis 2003). The worker's compensation statutes are founded in the language of Wyo. Const. art. 10, § 4.[3] This constitutional provision has sometimes been referred to as the "constitutional quid pro quo." *See generally Mills v. Reynolds*, 807 P.2d 383 (Wyo.1991). As the statutory limits on a worker's benefits in-

crease, and as the procedural hurdles for workers become more burdensome, the balance required to sustain the "quid pro quo" comes into question. *See In re Claim of Summers*, 987 P.2d 153, 157 (Wyo.1999); *Mauch v. Stanley Structures, Inc.*, 641 P.2d 1247, 1248 (Chief Justice Rose specially concurring) (Wyo.1982); and *Markle v. Williamson*, 518 P.2d 621, 625 (Wyo.1974).

[¶ 23] We perceive that the hearing examiner was correct in its resolution of the merits of Torres' claim in that Torres did not present evidence that satisfied the onerous requirements of the governing statute. That is, her own testimony was quite uncertain as to whether the hernia was of recent origin and as to whether it existed prior to the time of the accidental strain that caused her to seek medical attention. As set out more fully above, it is apparent from her own testimony that Torres experienced difficulty from the time she returned to work after her abdominal surgery, until the time that she finally sought additional medical care. Torres' burden at hearing was a heavy one, but it was not necessarily insurmountable.[4]

## CONCLUSION

[¶ 24] We affirm the district court's order affirming the Order Denying Benefits entered by the hearing examiner.

---

3. **§ 4. Damages for personal injuries or death not to be limited; worker's compensation.**

No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extrahazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. The funds or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. Monies in the fund shall be expended only for compensation authorized by this section, for administra-

tion and management of the Worker's Compensation Act, debt service related to the fund and for workplace safety programs conducted by the state as authorized by law. The right of each employee to compensation from the fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to the fund in favor of any person or persons by reason of the injuries or death. Subject to conditions specified by law, the legislature may allow employments not designated extrahazardous to be covered by the state fund at the option of the employer. To the extent an employer elects to be covered by the state fund and contributes to the fund as required by law, the employer shall enjoy the same immunity as provided for extrahazardous employments.

4. *See* 2 Larson's Workers' Compensation Law, §§ 43.01 and 43.02[1] (1999).