2009 WY 47

**Russel R. ROBINSON, Appellant (Petitioner),**

v.

**STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–07–0277.

Supreme Court of Wyoming.

April 2, 2009.

Representing Appellant: Megan Overmann Goetz of Pence and MacMillan LLC, Laramie, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General; Kristi M. Radosevich, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Russel Robinson worked as a pipefitter and welder for 25 years. He developed respiratory problems that he relates to his occupation. He sought medical benefits from the State of Wyoming Workers' Compensation Division (the Division). The Division determined Robinson did not suffer from a work-related injury and denied benefits. After a hearing before the Office of Administrative Hearings (the OAH), the OAH agreed with the Division and denied benefits. The district court affirmed the OAH's decision denying benefits. We also affirm.

## ISSUES

[¶ 2] Robinson presents three issues for our review:

I. Whether the hearing examiner's decision should be reversed because it is not supported by substantial evidence?

II. Whether the hearing examiner's decision should be reversed because it lacks critical findings of fact, willfully discounts overwhelming evidence and is internally inconsistent, thus making the decision arbitrary and capricious and otherwise an abuse of discretion?

III. Whether Robinson can be denied benefits when the hearing examiner's decision misapplied the appropriate legal burdens of proof, thereby committing errors of law?

## FACTS

[¶ 3] Robinson is approximately 52 years of age and worked as a welder and pipe-fitter for 25 years. In his occupation, he was potentially exposed to welding fumes, grinding debris, toxic material and petroleum products. Robinson did not wear a respirator. He wore a welding shield, which sometimes trapped fumes under the shield. Occasionally, when one was available, Robinson would wear a mask. According to Robinson, however, a mask did little to prevent him from inhaling fumes.

[¶ 4] On September 3, 2004, Robinson consulted with his general physician, Dr. Laurie Palmer, at a regularly scheduled appointment for a general physical. According to Dr. Palmer's notes, Robinson exhibited undue shortness of breath but no cough, wheezing or coughing up blood. She ordered a chest x-ray.

[¶ 5] According to his report of injury, later that same day Robinson "[i]nhaled steam, coke dust and welding fumes within coker unit at Frontier Refinery causing respiratory distress which continued to escalate." The chest x-ray already ordered by Dr. Palmer was taken September 8, 2004. The radiology report stated the x-ray revealed a "[n]onfocal interstitial prominence." Robinson sought further medical attention from Dr. Palmer on September 10, 2004, complaining he had trouble breathing, he was coughing and his chest hurt. Dr. Palmer took him off work, put him on oxygen and arranged for a chest CT scan and pulmonary function tests (PFTs). The radiology report from the CT scan, taken the same day, was "minor nonfocal peribronchial thickening with no cystic changes, bronchiectasis and no honeycombing is present." The results of the PFTs, conducted September 13, 2004, were normal.

[¶ 6] Dr. Palmer referred Robinson to Dr. Laura Brausch, a pulmonary physician. Although Dr. Brausch does not specialize in occupational lung disorders, she has been a pulmonary physician for 21 years. Dr. Brausch first examined Robinson on September 14, 2004. From the beginning she suspected welder's induced pulmonary disease: "I am concerned that this patient with his wheezing, cough, mucoid sputum production, snoring and abnormal CT scan of the chest may have welder's induced pulmonary disease or he may actually have an infection of some sort." She personally read the x-ray and CT scan. She reported his CT scan showed "multiple small nodular type areas with some bronchiectasis." His x-ray showed "the suggestion of infiltrates." She also diagnosed him with hypoxemia, an abnormally low amount of oxygen in the blood. She kept him off work and on oxygen. She gave him an antibiotic to take in case he had an infection and arranged to see him again in a month.

[¶ 7] Robinson's next appointment with Dr. Brausch was on October 20, 2004. Robinson reported feeling a little better and his cough was down. He continued to complain of shortness of breath with exertion. Dr. Brausch continued him on oxygen, with an increased flow rate upon excess activity. Dr. Brausch noted at this time that Robinson "has interstitial lung disease and bronchiectasis on his CT scan. He has hypoxemia, and he is a welder. I am concerned that there is a welding component to this." She arranged for Robinson to undergo a bronchoscopy and transbronchial biopsies.

[¶ 8] Dr. Brausch conducted the bronchoscopy and transbronchial biopsies on November 5, 2004. The bronchoscopy revealed minimal foamy mucus but no other abnormalities in either lung. Four biopsy specimens were taken from Robinson's right lung, which were sent to a lab for testing. Dr. Brausch's assessment of Robinson's condition at the end of this procedure was "interstitial lung disease and bronchiectasis with some occupational exposure." She reported the etiology for his hypoxemia and lung disease was still to be ascertained.

[¶ 9] On November 8, 2004, the report from the lab on the biopsy specimens was completed. The diagnosis listed in the report in pertinent part stated there was "no interstitial lung disease identified." Dr. Brausch testified by deposition that, in her mind, this result was not definitive. She explained her biopsies were blind samples. Thus, if there was any clear lung tissue along with diseased tissue she might simply have missed the diseased tissue with her biopsy samples.

[¶ 10] Robinson saw Dr. Brausch again on December 17, 2004. Dr. Brausch stated she was "following him for a vague interstitial lung disease associated with very significant hypoxemia." Her diagnosis was "interstitial lung disease with hypoxemia and we can only find his job as a welder as the etiologic agent for this." She ordered another CT scan, which was performed on December 20, 2004. The radiology report from this scan noted "minimal subpleural densities par-

ticularly in the lower lobes with no discrete nodules, infiltrates, or other abnormality identified." Dr. Brausch again testified this was not conclusive, stating that if Robinson's lung disease involved an inflammatory process it could have improved by the time that CT scan was taken.

[¶ 11] The Division denied Robinson's claim on October 25, 2004. In response, Dr. Brausch wrote a letter to the Division dated December 17, 2004. In the letter she stated:

Mr. Robinson is a 51-year-old male who has worked in the welding industry mostly unprotected for 25 years. He has hypoxemia and interstitial lung infiltrates for which we have performed a bronchoscopy. We have a negative bronchoscopy with negative cystology and negative cultures except for a very sensitive bacteria on the wash for which he is receiving antibiotics. This is not the cause of his problem, however. His breathing tests are normal but he has very significant hypoxemia during the day and the night with oxygen saturations dropping to 74% on room air just by getting dressed and his nighttime pulse oximetry shows that 60% of the night is spent with oxygen saturations less than 88%.

The patient for a while was coughing up some sputum but now has stopped that. His main complaint is shortness of breath and hypoxemia.

The CT scans have shown interstitial lung infiltrates. It is felt that his job working as a welder with various different companies is responsible for these interstitial infiltrates as an alveolitis type pattern. It is noted that his cough has improved since he stopped welding and he does feel better although he remains hypoxemic.

[¶ 12] At her deposition Dr. Brausch again confirmed that, although she could not be one hundred percent certain without further, invasive testing, the evidence before her pointed to the probable conclusion that Robinson suffered from work-related lung disease. The basis for her opinion was:

We have a history consistent with it, we have a patient who's a nonsmoker in their 40s. The picture is not clouded by smoking-induced lung disease. We have a very strong response to staying away from the work environment. And we have a history that suggests that this was not an acute bronchitis but rather a chronic illness that improved, very, very nicely, very shortly after being away from the exposure.

[¶ 13] Even so, Dr. Brausch, because the results of the transbronchial biopsies were inconclusive in her mind, and because she did not have definitive proof of welder's lung disease, referred Robinson to National Jewish Hospital for a second opinion. National Jewish Hospital specializes in respiratory ailments. Robinson was seen by Dr. Cecile Rose, a staff physician in the Occupational and Pulmonary Medicine Clinic of National Jewish Hospital on October 11, 2005.

[¶ 14] Dr. Rose wrote a comprehensive report incorporating her findings. The report is officially titled: "Occupational and Environmental Medicine Clinic Summary." Dr. Rose states in the Summary Robinson came to her seeking evaluation of possible welder's lung. Her goal was to establish diagnostic clarity and assess Robinson's eligibility for worker's compensation.

[¶ 15] Robinson gave Dr. Rose a detailed work history. He stated he began working as a pipe-fitter and welder in 1981 and had worked in the field for various companies ever since. Robinson also gave a history of his respiratory complaints, going back approximately ten years. Robinson stated every time he was off work during that timeframe his respiratory condition improved. Dr. Rose specifically related Robinson told her he had been off work since the instant problems developed in 2004 and "many of his respiratory and systemic symptoms improved after leaving the work environment."

[¶ 16] Dr. Rose reviewed the medical records of Dr. Brausch as well as other medical records. The tissue slides and washing cytology slide obtained by the 2004 transbronchial biopsy were reviewed in-house at National Jewish Hospital. Dr. Rose reviewed these results and the results of numerous other prior diagnostic studies. Robinson also underwent extensive testing at National Jewish Hospital including a new CT scan.

[¶ 17]   In her impressions, Dr. Rose noted Robinson's improvement over the years when away from the work-place.  With regard to his respiratory problems at these times she stated: "[p]robably some of these episodes are attributable to metal fume fever from exposure to galvanized welding fumes."  Also in her impressions Dr. Rose concluded:

> No clear evidence of interstitial lung disease, with findings on chest CT scan more suggestive of airways inflammation, normal resting pulmonary function tests, no gas exchange abnormalities with exercise, and no abnormalities on transbronchial biopsy.

In Dr. Rose's final opinion, she states:

> At this time, based on his normal pulmonary function at rest and with exercise, along with the subtle nonspecific findings on his CT scan and normal transbronchial biopsies, I cannot say to a reasonable degree of medical probability that Mr. Robinson has a work-related lung disease.

[¶ 18]   Dr. Brausch saw Robinson again after she received Dr. Rose's Summary.  By this time, Robinson's hypoxemia had resolved.  Dr. Brausch noted that Robinson's "National Jewish report was pretty good."  Dr. Brausch continued, however, to maintain her diagnosis of welder's lung disease.

[¶ 19]   At Robinson's contested case hearing, the hearing officer was presented with all the medical records from Dr. Palmer, Dr. Brausch, and Dr. Rose.[1]  As stated above, Dr. Brausch testified by deposition.  Her deposition was taken before she had received the results from Dr. Rose and there was no follow up deposition.  Robinson was the only live witness.

[¶ 20]   The hearing officer's decision essentially came down to a determination of whether to accept Dr. Brausch's opinion or Dr. Rose's opinion.  The hearing officer chose to rely on the opinion of Dr. Rose.  In pertinent part, the final order reads:

23.   There are conflicting medical opinions and possible causes for Robinson's breathing problems.  Dr. Brausch is a pulmonologist and treated Robinson for his pulmonary condition.  Dr. Brausch's testimony clearly established Robinson's pulmonary condition was the result of exposure over a substantial period of time pursuant to Wyo. Stat. Ann. § 27–14–603(a)(i) through (v) (LEXIS 2004) and opined Robinson had welder's lung from work exposure.  However, Dr. Brausch did not have the results [of the evaluation] from National Jewish Hospital where she sent Robinson for a second opinion.

* * * *

25.   Robinson was sent to National Jewish Hospital by Dr. Brausch for a second opinion and to confirm Dr. Brausch's diagnosis of interstitial lung or welder's disease.  Dr. Rose indicated he [sic] could not say Robinson had any work-related lung disease and the etiology of Robinson's hypoxemia was unknown.  National Jewish Hospital is known for its pulmonary medicine and the opinion of Dr. Rose is considered to be more persuasive.  This Office finds the testing and opinions from Dr. Rose to be more persuasive and benefits should be denied.

On review, the district court affirmed the hearing officer's decision.

## DISCUSSION

### *Evidentiary Issues*

[¶ 21]   We review evidentiary issues to determine if the OAH's decision is supported by substantial evidence.  Wyo. Stat. Ann. § 16–3–114(c)(ii)(E) (LexisNexis 2007).  We review the entire record in order to determine if the OAH's decision against Robinson is against the overwhelming weight of the evidence.  *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo.2008).

---

1.   Robinson also underwent an independent medical examination (IME) at the request of the Division.  The medical records from this examination were also introduced.  The IME physician reported no pulmonary problems but instead opined Robinson suffered from coronary disease.  Robinson thereafter was examined by a cardiologist who found no coronary problems as identified in the IME.  Consequently the hearing officer expressly discounted the IME opinion, making that portion of the evidence largely irrelevant to our analysis.  It will not be further addressed.

[¶ 22] Robinson throws a great many arguments our way on what are essentially evidentiary issues. The common thread is his argument that the hearing officer was unjustified in relying on Dr. Rose's medical opinion. Robinson's primary reason is that Dr. Rose's opinion lacks proper foundation. Robinson complains that the hearing officer did not properly take into account that his examination with Dr. Rose occurred one year after he began seeking treatment for his respiratory problems. By his and his treating physician's testimony, his respiratory condition had improved a great deal during that year, most especially immediately after he left his work environment.

[¶ 23] The problem with Robinson's argument is that, as reflected in her Summary, Dr. Rose was well-aware of his respiratory condition in September 2004 and his improvement since leaving his work environment. The question before her was whether Robinson had a permanent, work-related lung disease (as versus something temporary such as metal fume fever). The immediate and prior diagnostic testing and Robinson's presentation at his exam, in her opinion, did not support a finding of work-related lung disease to a reasonable degree of medical probability.[2]

[¶ 24] The evidence against Dr. Rose's opinion is not overwhelming. The primary evidence in favor of Robinson having work-related lung disease comes from Dr. Brausch. Robinson argues, as his treating physician, Dr. Brausch's opinion should be given primary weight. Certainly her status as his treating physician should be given consideration, but it is not decisive of the weight to be given her opinion. It must be weighed against the other evidence in the case. Dr. Rose, while she did not treat Robinson on an ongoing basis, did have the benefit of reviewing all Robinson's medical records from Dr. Brausch, including diagnostic studies. Robinson also gave her an extensive history of his career and his respiratory problems. Finally, Dr. Rose did her own extensive testing on Robinson. Because of the comprehensive review and examination by Dr. Rose, Dr. Brausch's opinion does not enjoy an overwhelming advantage simply because she is Robinson's treating physician.

[¶ 25] Additionally, there are other factors weighing against Dr. Brausch's diagnosis. Most importantly, the diagnostic tests in general do not support her opinion. We recognize Dr. Brausch testified as to why she did not consider the outcomes of the diagnostic testing such as the bronchoscopy, the transbronchial biopsies and the later CT scans conclusive. The outcomes of these objective tests, however, are still part of the entire evidentiary package.

[¶ 26] Robinson also argues the hearing officer improperly ignored his testimony regarding causation. Robinson attributed his respiratory problems to his work:

Well, I feel like it's related to my work, because I—once I was put on oxygen and didn't go to work, it—some of the symptoms seemed to get better and haven't gotten worse. And upon examining some of these reports that we've read, it seems to point in that direction. And, also, just the knowledge of the things that I've been through and the nasty, polluted environments that I have worked in in the past, that I feel this is directly related to my work.

This testimony is merely a recitation of his medical and work history available to both Dr. Brausch and Dr. Rose, with his personal opinion as to its significance attached. Dr. Rose gave this information a different significance. We cannot say Robinson's testimony, even combined with Dr. Brausch's testimony and records, amounts to overwhelming evidence in contradiction to Dr. Rose's medical opinion.

[¶ 27] Reviewing the entire record, we cannot say the OAH decision is against the overwhelming weight of the evidence. We

---

2. Robinson categorizes Dr. Rose's opinion as uncertain and inconclusive. Robinson claims Dr. Rose's opinion amounts to simply a statement that she could not confirm Dr. Brausch's diagnosis, not that she disagreed with it. We find no such ambiguity in the statement "I cannot say to a reasonable degree of medical probability that Mr. Robinson has a work-related lung disease." If it must be rephrased, it rephrases easily into Dr. Rose stating that, in her opinion, it is not medically probable that Robinson has a work-related lung disease.

therefore reject Robinson's evidentiary challenges.

### Arbitrariness

[¶ 28]   Even though the decision is supported by substantial evidence, it may still be deemed arbitrary, capricious, or otherwise not in accordance with law:

The arbitrary and capricious standard remains a " 'safety net' to catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard."   ... [T]he arbitrary and capricious standard will apply if the hearing examiner refused to admit testimony or documentary exhibits that were clearly admissible or failed to provide appropriate findings of fact or conclusions of law.   This listing is demonstrative and not intended as an inclusive catalog of all possible circumstances.

*Dale*, ¶ 23, 188 P.3d at 561.

[¶ 29]   In his first claim of arbitrariness, Robinson argues the hearing officer failed to make adequate findings of fact regarding certain statutory factors.   Both Robinson and Dr. Brausch claim Robinson developed lung disease through his work exposure over time.   A claimant seeking compensation for an injury occurring over time is required

to prove by competent medical authority that his claim arose out of and in the course of his employment and to prove by a preponderance of evidence that:

(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;

(ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;

(iii) The injury can fairly be traced to the employment as a proximate cause;

(iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and

(v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.

Wyo. Stat. Ann. § 27–14–603(a) (LexisNexis 2007).   Robinson claims the hearing officer failed to consider any of these factors.

[¶ 30]   While we agree the hearing officer did not expressly consider these factors, such consideration was unnecessary.   The first step is for the claimant to prove he has an injury.   The Worker's Compensation Act defines "injury" as

any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extra-hazardous duties incident to the business.

Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2007).   The injury claimed by Robinson was a work-related lung disease.   Dr. Rose refuted he had such a disease.   Because the hearing officer accepted Dr. Rose's opinion, there was no need to go any further.

[¶ 31] · In his second claim of arbitrariness, Robinson argues the hearing officer erred in not articulating specific and detailed factual findings supporting his decision to find Dr. Rose's opinion more persuasive than Dr. Brausch's.

We have held it essential to surviving judicial review that the record of a contested agency action contain such factual findings as would permit a court to follow the agency's reasoning from the evidentiary facts on record to its eventual legal conclusions.   *Larsen v. Oil and Gas Conservation Comm'n,* 569 P.2d 87, 90–91 (Wyo. 1977); *Powell v. Board of Trustees, Crook County School District No. 1,* 550 P.2d 1112, 1120 (Wyo.1976).   Similarly, we have held that a contested case hearing must provide, and the record of that proceeding must document, information sufficient to the making of a reasonable decision.   Absent such information, the agency decision must be set aside as arbitrary.   *Western*

*Radio Communications, Inc. v. Two–Way Radio Service, Inc.,* 718 P.2d 15, 20 (Wyo. 1986); *Monahan v. Board of Trustees, Elementary School District No. 9,* 486 P.2d 235, 237 (Wyo.1971).

*Newman v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2002 WY 91, ¶ 16, 49 P.3d 163, 169 (Wyo.2002).

[¶ 32] At the risk of being repetitive, we will summarize the evidentiary story as it unfolded and as gleaned from the hearing officer's findings of fact. Robinson was a pipe-fitter/welder for 25 years. During that time he was exposed to air-born particulates and fumes known to cause lung disease. Robinson now suffers from some form of pulmonary deficiency. His respiratory difficulties, although they have not completely resolved, improved when he stopped working. The circumstantial assumption is that Robinson's pulmonary problem is a chronic industrial injury, such as welder's lung disease. This is the position of Robinson's pulmonary physician, Dr. Brausch. While objective medical tests provide no support for welder's lung disease, Dr. Brausch is quick to point out that neither do the tests rule out welder's lung disease. She therefore maintains her diagnosis.

[¶ 33] On the other side is Dr. Rose. Dr. Rose was well-aware of Robinson's work history. She knew Robinson's symptoms improved after he left his work environment and it had been approximately one year from the time he ceased working to her examination of him. She reviewed Dr. Brausch's notes and tests. She conducted her own extensive testing, including a new CT scan. In the end, after reviewing all the data, she could not say with a reasonable degree of medical probability that Robinson has a work-related lung disease.

[¶ 34] As the finder of fact, the hearing examiner is charged with resolving conflicting testimony and weighing the evidence. *Hicks v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 11, ¶ 18, 105 P.3d 462, 470 (Wyo.2005). In his order, the hearing officer discussed Dr. Rose's Summary at length. His discussion relates that Dr. Rose took Robinson's medical history, including his relation of events and Dr. Brausch's records, into account in rendering her opinion. She also conducted her own examination and objective testing. The hearing officer also discussed Dr. Brausch's treatment and diagnosis of Robinson at length. The hearing officer recognized that he was faced with two contradicting medical opinions. He chose Dr. Rose's opinion as the more credible:

Weighing the medical opinions offered in this case, this Office finds the opinion of Dr. Rose at National Jewish Hospital to be more persuasive. National Jewish Hospital is known for its pulmonary medicine. Dr. Rose indicated he [sic] could not say Robinson had any work-related lung disease and the etiology of Robinson's hypoxemia was unknown. This Office concludes the testing and opinions from Dr. Rose to be more persuasive.

[¶ 35] The hearing officer does not spell out further why he believed Dr. Rose to be more persuasive. While he easily could have filled in some blanks, we find, under the specific facts of this case, it was unnecessary to do so. The order is complete enough to assure us that the hearing officer engaged in a reasoned analysis of all the facts in arriving at his final credibility determination.

### Otherwise not in accordance with law

[¶ 36] Robinson argues the hearing officer erred by failing "to consider that the work injury of September 3, 2004 directly caused the respiratory and lung injuries, and/or substantially and materially aggravated a preexisting condition." Robinson grounds this argument in our prior rulings that a hearing officer "has an obligation to invoke and apply the rules of law that support a claimant's theory of the case." *Carabajal v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2005 WY 119, ¶ 21, 119 P.3d 947, 954 (Wyo.2005); *Pino v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 996 P.2d 679, 687 (Wyo.2000). The information presented, however, must be sufficient to alert the hearing officer to the claimant's theory of the case.

[¶ 37] Robinson proceeded on only one theory—that he suffered an injury occur-

ring over a substantial period of time. As Dr. Brausch put it, Robinson was suffering from interstitial lung disease induced by 25 years as a welder and pipe-fitter. The facts do not readily support any alternate theory. There also was nothing in Robinson's argument below that can be considered as properly alerting the hearing officer that he intended to proceed under any other alternate theory. In fact, at the hearing his attorney expressly rejected the possibility that this could be a one-time incident. In light of the evidence and Robinson's argument below, we find the hearing officer did not err when he did not, sua sponte, consider alternate theories of recovery on Robinson's behalf.

## CONCLUSION

[¶ 38]  The OAH decision denying benefits to Robinson is supported by substantial evidence. Dr. Rose took into account all relevant information in reaching her opinion that Robinson did not, to a degree of medical probability, suffer from a work-related lung disease. The decision and order are not otherwise arbitrary, capricious, or not in accordance with law. The denial of benefits is affirmed.